457 So.2d 481 (1984)
STATE of Florida, Petitioner,
v.
Jack NEIL, Respondent.
Jack NEIL, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 63899, 63933.
Supreme Court of Florida.
September 27, 1984.
*482 Jim Smith, Atty. Gen. and Diane Leeds, Asst. Atty. Gen., Miami, for petitioner/respondent.
Paul A. Louis, Ray Ellen Yarkin, John L. Zavertnik and Leonard H. Rubin of Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, and Jesse J. McCrary, Jr., Miami, for respondent/petitioner.
Donald M. Middlebrooks, Talbot D'Alemberte and Thomas R. Julin of Steel, Hector & Davis, Miami; Thomas Atkins, Gen. Counsel and Charles E. Carter, Associate Gen. Counsel, Brooklyn, N.Y.; John D. Due, Jr., Legal Redress Chairman, Miami; and Gerald B. Cope of Arky, Freed, Stearns, Watson, Greer & Weaver, Miami, amici curiae for The Florida State Conference Of Branches Of The N.A.A.C.P. and Common Cause Of Florida.
McDONALD, Justice.
In Neil v. State, 433 So.2d 51 (Fla. 3d DCA 1983), the district court certified the following question to be of great public importance:
Absent the criteria established in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), may a party be required to state the basis for the exercise of a peremptory challenge?
Id. at 52. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. Believing that it is time in Florida to hold that jurors should be selected on the basis of their individual characteristics and that they should not be subject to being rejected solely because of the color of their skin, we answer the question with a qualified affirmative and quash the district court's decision.
The state charged Neil, a black man, with second-degree murder and unlawful possession of a firearm. The charges stemmed from Neil's shooting of a black Haitian immigrant. For Neil's trial the jury pool consisted of thirty-five prospective jurors, thirty-one whites and four blacks. The state used peremptory challenges to remove the first three blacks called. The defense objected to each of these challenges and moved to strike the entire pool. After the state challenged the third black prospective juror, the court heard argument on whether the state's challenges were discriminatory and violated Neil's sixth amendment right to trial by an impartial jury. The court held that the *483 state did not have to explain its challenges and denied the defense motion. The court did, however, give each side five additional peremptory challenges. The defense then used all of its peremptory challenges in an effort to reach the remaining black prospective juror, who eventually served as an alternate juror. The jury convicted Neil as charged.
On appeal Neil claimed that the trial court erred in denying his motion, thereby improperly allowing the state to exercise its peremptory challenges so as to exclude all blacks from his jury. The district court, however, held that Neil did not meet the requirements of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The court refused to adopt an alternate test derived from People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 148 Cal. Rptr. 890 (1978), and Commonwealth v. Soares, 377 Mass. 461, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), finding Neil's argument in favor of those cases not to be compelling. Recognizing that this issue is troublesome and capable of repetition, however, the district court certified its question to this Court.
In Swain v. Alabama Swain claimed, among other things, that the state discriminated by systematically excluding blacks from petit juries. The Supreme Court stated that "purposeful discrimination may not be assumed or merely asserted," but must be proved. 380 U.S. at 205, 85 S.Ct. at 827. The court found
no reason ... why the defendant attacking the prosecutor's systematic use of challenges against Negroes should not be required to establish on the record the prosecutor's conduct in this regard, especially where the same prosecutor for many years is said to be responsible for this practice and is quite available for questioning on this matter.
Id. at 227-28, 85 S.Ct. at 839-40 (footnote omitted). In support of its holding the court reasoned that if peremptory challenges could be examined they would no longer be peremptory.[1] The Court went on to say that
we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court.
Id. at 222, 85 S.Ct. at 836.
It appears that the Swain test has seldom if ever been met. See Annot., 79 A.L.R.3d 14 (1977). But see State v. Brown, 371 So.2d 751 (La. 1979) (defendant made sufficient showing to establish prima facie discrimination). Additionally, Swain has received a considerable amount of criticism. E.g., Brown, McGuire, & Winters, The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse, 14 New Eng. L. Rev. 192 (1978); Martin, The Fifth Circuit and Jury Selection Cases: The Negro Defendant and His Peerless Jury, 4 Hous.L.Rev. 448 (1966); Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L. Rev. 1157 (1966). Although the United States Supreme Court recently denied certiorari in a case where Swain apparently could have been revisited, three members of that Court agreed that consideration of the issue by state and other federal courts *484 would be helpful, McCray v. New York, ___ U.S. ___, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (Stevens, J., concurring), while Justices Marshall and Brennan would have taken McCray and reconsidered Swain.[2]
Numerous jurisdictions have considered the allegedly discriminatory use of peremptory challenges in the last few years. Most have adhered to the Swain test, have found no evidence of impropriety, or have found the complained-of peremptories to have been exercised because of specific bias.[3] Several courts, on the other hand, based on a synthesis of state constitutional provisions and more recent United States Supreme Court cases, have fashioned less stringent tests than that set out in Swain and have permitted inquiry into why a party exercised a peremptory challenge.[4]
In People v. Wheeler the California Supreme Court traced the United States Supreme Court's path in its journey to holding that defendants have a right to impartial juries drawn from a cross-section of the community.[5] The court went on to rely on California law and held that Swain would not be followed in California courts. The court set out the following procedure to be used to show that peremptories have been exercised in a discriminatory manner. The party claiming discrimination must raise the point in a timely manner and make a prima facie case to the court's satisfaction by making as complete a record as possible, by establishing that the challenged persons are members of a cognizable group, and by showing "a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal. Rptr. at 905. When this evidence has been presented, the court must determine if there is a reasonable inference that the challenges are being made solely on the basis of group bias. If the court determines that a prima facie case has been demonstrated, the party that *485 exercised the questioned peremptories "must satisfy the court that he exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses." Id. at 282, 583 P.2d at 765, 148 Cal. Rptr. at 906.
The Supreme Judicial Court of Massachusetts has also considered this issue and, shortly after Wheeler, came to much the same conclusion as the California court. In Commonwealth v. Soares the court held that using peremptory challenges "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group," violated the Massachusetts Constitution's guarantee of trial by an impartial jury. 377 Mass. at 488, 387 N.E.2d at 516. The Massachusetts court began with the presumption that peremptories will be exercised properly and held that either party could rebut that presumption by showing:
(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership.
Id. at 490, 387 N.E.2d at 517. If these criteria are met, the trial court must then decide whether to infer that the peremptories have been used to exclude persons based on group affiliation. If the court determines that the presumption of proper use has been rebutted, the person who exercised the peremptories must demonstrate otherwise.
Neil urges that we repudiate Swain and adopt a test derived from Wheeler and Soares.[6] The state, on the other hand, contends that doing so will open a Pandora's box of problems, including quota juries and an undesirable fundamental alteration of the jury system. We understand the state's concerns, but, while we do not fully embrace either Wheeler or Soares, we believe that an alternative to Swain is needed.[7]
While quite similar to Wheeler and Soares, People v. Thompson, 79 A.D.2d 87, 435 N.Y.S.2d 739 (1981), charts a more even course in the exercise of peremptory challenges.[8] After analyzing numerous United States Supreme Court cases and cases from several state courts, the New York court held that petit juries should
be selected in a manner that permits the exclusion of blacks only by means of either random selection or the challenging of prospective jurors, on the basis of actual or perceived partiality, which relates not to race alone, but to the particular case on trial or the parties or witnesses thereto by the use of the challenge for cause or the peremptory challenge.
Id. at 106, 435 N.Y.S.2d at 752. The procedure outlined in Thompson is similar to those advocated in Wheeler and Soares. The initial presumption is that peremptories are exercised in a constitutionally proper manner. This presumption can be overcome by raising the issue in a timely manner and making a record that shows that the challenged persons are members of a distinctive racial group and that it is likely that they have been challenged solely because of race. If a defendant can show this,
the Trial Judge must determine whether there is a substantial likelihood that peremptory challenges are being used on *486 the ground of race alone. If it is determined that such a likelihood does not exist, then no inquiry of the prosecutor may be made. However, if it is determined that such a likelihood does exist, then, and only then, does the burden shift to the prosecutor to show, in response to inquiry by the trial court, that the peremptory challenges in question were not exercised solely on the basis of the prospective juror's race. To carry this burden, the prosecutor need not show that his reasons for the exercise of the challenges in question "rise to the level of a challenge for cause." However, it must be shown that the exercise of such challenges was based on grounds that were related to the characteristics of the prospective juror apart from his race, the particular case on trial, or the parties or witnesses thereto.
Id. at 108-09, 435 N.Y.S.2d at 754 (footnote omitted, citation omitted). The New York court parted company with Wheeler and Soares, however,
to the extent that they suggest that a defendant may compel inquiry into the reasons for a prosecutor's use of peremptory challenges merely because the prosecutor has used a particular number of his peremptory challenges to exclude black potential jurors, for it may well be that the prosecutor's peremptory challenges were properly exercised, but for reasons that are not as readily apparent to those who were not in the position of the Judge who attended the voir dire. Thus, while exclusion of a significant number of black potential jurors will usually be part of the case of a defendant who seeks to have the trial court inquire into the prosecutor's use of peremptory challenges based upon alleged exclusion of blacks, such exclusion will be insufficient, in and of itself, to warrant reversal of a trial court's determination not to make inquiry.
Id. at 110-11, 435 N.Y.S.2d at 755.
Article I, section 16 of the Florida Constitution guarantees the right to an impartial jury. The right to peremptory challenges is not of constitutional dimension. The primary purpose of peremptory challenges is to aid and assist in the selection of an impartial jury. It was not intended that such challenges be used solely as a scalpel to excise a distinct racial group from a representative cross-section of society. It was not intended that such challenges be used to encroach upon the constitutional guarantee of an impartial jury. As did the New York, California, and Massachusetts courts, we find that adhering to the Swain test of evaluating peremptory challenges impedes, rather than furthers, article I, section 16's guarantee. We therefore hold that the test set out in Swain is no longer to be used by this state's courts when confronted with the allegedly discriminatory use of peremptory challenges.
Instead of Swain, trial courts should apply the following test. The initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection[9] and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely *487 because of the prospective jurors' race.[10] The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue. On the other hand, if the party has actually been challenging prospective jurors solely on the basis of race, then the court should dismiss that jury pool and start voir dire over with a new pool.
Although specifically dealing with blacks, both Wheeler and Soares speak generally of group bias based on racial, religious, ethnic, sexual, or other grounds. Thompson, on the other hand, appears to be limited solely to race, specifically blacks. We choose to limit the impact of this case also and do so to peremptory challenges of distinctive racial groups solely on the basis of race. The applicability to other groups will be left open and will be determined as such cases arise.
Thompson speaks only of challenges exercised by the prosecution. Wheeler and Soares, on the other hand, recognize that the ability to challenge the use of peremptories should be given to the prosecution as well as to the defense. We agree with Wheeler and Soares on this point and hold that both the state and the defense may challenge the allegedly improper use of peremptories.[11] The state, no less than a defendant, is entitled to an impartial jury.
In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Court held that distinctive groups cannot be systematically excluded from venires because petit juries must be selected from a representative cross-section of the community. No one is entitled to a jury of any particular composition, and it is possible that the cross-section requirement might have to give way before article I, section 16's guarantee of an impartial jury.[12] "A cross-section of the fair and impartial is more desirable than a fair cross-section of the prejudiced and biased." Smith v. Balkcom, 660 F.2d 573, 583 (5th Cir.1981). It may even be possible that, on the peculiar facts of a particular case, no member of some distinct group could be impartial. If this occurs, an attorney should be able to state with certainty that this is so and that peremptories have been exercised because of empathy or bias.[13]
Turning to the instant case, we find that Neil should be given a new trial before a new jury. His counsel objected to the state's excusal of black prospective jurors.[14] The court allowed additional peremptories after argument, but acceded to the state's reliance on Swain. We cannot tell, if the test we have set out here had been available, whether or not the trial court would have found that Neil had shown a sufficient likelihood of discrimination in order for the court to inquire as to the state's motives. It may well be that the state did not excuse those prospective jurors solely because of their race. The bottom line, however, is that we simply cannot tell.
*488 Although we hold that Neil should receive a new trial, we do not hold that the instant decision is retroactive. The difficulty of trying to second-guess records that do not meet the standards set out herein as well as the extensive reliance on the previous standards make retroactive application a virtual imposibility. Even if retroactive application were possible, however, we do not find our decision to be such a change in the law as to warrant retroactivity or to warrant relief in collateral proceedings as set out in Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
To recapitulate, a party's peremptories cannot be examined until the issue is properly presented to the trial court and until the trial court has determined that such examination is warranted. If such occurs, the challenged party must show that the questioned challenges, but no others, were not exercised solely on the basis of race. We answer the certified question in the affirmative and direct the district court to remand for a new trial.[15]
It is so ordered.
OVERTON, EHRLICH and SHAW, JJ., concur.
ALDERMAN, J., dissents with an opinion in which BOYD, C.J., and ADKINS, J., concur.
ALDERMAN, Justice, dissenting.
I would approve the decision of the district court of appeal. The majority has reached a result that is not required by either the federal or our state constitution.
The majority's holding is contrary to the weight of authority and goes far beyond the test established by the United States Supreme Court in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The Court in Swain, referring to peremptory challenges, said:
The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. State v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949); Lewis v. United States, 146 U.S. 370, 378 [13 S.Ct. 136, 139, 36 L.Ed. 1011]. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. Hayes v. Missouri, 120 U.S. 68, 70 [7 S.Ct. 350, 351, 30 L.Ed. 578]. It is often exercised upon the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another," Lewis, supra [146 U.S.], at 376 [13 S.Ct. at 138], upon a juror's "habits and associations," Hayes v. Missouri, supra [120 U.S.], at 70 [7 S.Ct. at 351] or upon the feeling that "the bare questioning [a juror's] indifference may sometimes provoke a resentment," Lewis, supra, [146 U.S.] at 376 [13 S.Ct. at 138]. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the voir dire, by both prosecutor and accused, Miles v. United States, [13 OTTO 304], 103 U.S. 304 [26 L.Ed. 481]; Aldridge v. United States, 283 U.S. 308 [51 S.Ct. 470, 75 L.Ed. 1054]. This Court has held that the fairness of trial by jury requires no less. Aldridge, supra. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather *489 they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.
380 U.S. at 220-21, 85 S.Ct. at 835-36 (footnotes omitted). As pointed out by the district court, "[w]hen peremptory challenges are subjected to judicial scrutiny, they will no longer be peremptory." Neil v. State, 433 So.2d 51, 52 (Fla. 3d DCA 1983).
This decision should give no cause for criminal defendants to celebrate. The sword which the majority has fashioned is two edged, and it will cut both ways. As I read the majority opinion, a defendant who believes, rightly or wrongly, that he would not receive a fair trial from a jury composed of members of a certain racial group will no longer be able to freely exercise peremptory challenges to excuse members of that group from his jury. Apparently, this court-imposed restriction on peremptory challenges would even prevent a defendant from peremptorily challenging members of his own race. For example, the defendant in this case, Mr. Neil, a black man, is charged with killing another black man. Rightly or wrongly, if he perceived that there was a prejudice against him in the black community and he believed that he would not receive a fair trial if he were judged by members of his own race, he would not, for that reason alone, be able to peremptorily challenge black jurors. Likewise, under the rule established by this case, Mr. Neil would not be able to peremptorily challenge white jurors solely for the purpose of increasing the number of blacks on his jury.
I agree with the majority that both the state and the defendant are entitled to an impartial jury. I disagree, however, with the majority's conclusion that to ensure an impartial jury, we must change the long-existing law related to peremptory challenges.
BOYD, C.J., and ADKINS, J., concur.
NOTES
[1] "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." Swain, 380 U.S. at 220, 85 S.Ct. at 835. For a history of peremptory challenges see Swain; Note, Systematic Exclusion of Cognizable Groups by Use of Peremptory Challenges, 11 Fordham Urb. L.J. 927 (1982-83). Peremptory challenges also have a long history in Florida. While still a territory, Florida gave defendants to felony charges 20 peremptories. Act Nov. 19, 1828, § 14. The state later gained peremptories, but it still received fewer than defendants. Ch. 1010, § 7 (1877) (capital cases: defendant  20, state  5; other felonies: defendant  5, state  2; misdemeanors: defendant  3, state  2). In § 2855 of the 1892 Revised Statutes the state achieved parity with defendants as to the number of peremptory challenges, which parity still exists. § 913.08, Fla. Stat. (1983).
[2] McCray also had filed a habeas corpus petition with federal district court. Taking Justice Stevens' invitation to heart, that court held that the record made out a prima facie case of discrimination under Wheeler and ordered that McCray be retried. McCray v. Abrams, 576 F. Supp. 1244 (E.D.N.Y. 1983).
[3] Flowers v. State, 402 So.2d 1088 (Ala. Crim. App. 1981); Mallott v. State, 608 P.2d 737 (Alaska 1980); Beed v. State, 271 Ark. 526, 609 S.W.2d 898 (1980); People v. Smith, 622 P.2d 90 (Colo.Ct.App. 1980); Saunders v. State, 401 A.2d 629 (Del. 1979), cert. denied, 449 U.S. 845, 101 S.Ct. 128, 66 L.Ed.2d 54 (1980); Doepel v. United States, 434 A.2d 449 (D.C.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981); Blackwell v. State, 248 Ga. 138, 281 S.E.2d 599 (1981); People v. Payne, 99 Ill.2d 135, 75 Ill. Dec. 643, 457 N.E.2d 1202 (1983); State v. Stewart, 225 Kan. 410, 591 P.2d 166 (1979); State v. Robinson, 386 So.2d 1374 (La. 1980); Lawrence v. State, 295 Md. 557, 457 A.2d 1127 (1983); State v. Sims, 639 S.W.2d 105 (Mo. Ct. App. 1982); (Lee v. State, 637 P.2d 879 (Okla. Crim. App. 1981); Commonwealth v. Henderson, 497 Pa. 23, 438 A.2d 951 (1981); State v. Raymond, 446 A.2d 743 (R.I. 1982); Jason v. State, 589 S.W.2d 447 (Tex. Crim. App. 1979); State v. Grady, 93 Wis.2d 1, 286 N.W.2d 607 (Ct.App. 1979); Evans v. State, 653 P.2d 308 (Wyo. 1982).
[4] One of these cases, People v. Payne, 106 Ill. App.3d 1034, 62 Ill.Dec. 744, 436 N.E.2d 1046 (App.Ct. 1980), has been reversed and the Illinois Supreme Court's agreement with Swain reaffirmed. People v. Payne, 99 Ill.2d 135, 75 Ill. Dec. 643, 457 N.E.2d 1202 (1983).

In State v. Crespin, 94 N.M. 486, 612 P.2d 716 (Ct.App. 1980), the New Mexico Court of Appeals held that
improper systematic exclusion by use of peremptory challenges can be shown (1) under Swain v. State of Alabama, supra, by presenting facts beyond the instant case; or (2) under the Wheeler-Soares rationale and supported by Article II, Section 14 of the New Mexico Constitution, where the absolute number of challenges in the one case raises the inference of systematic acts by the prosecutor.
Id. at 488, 612 P.2d at 718. In both Crespin and State v. Davis, 99 N.M. 522, 660 P.2d 612 (Ct. App.), cert. denied, 99 N.M. 578, 661 P.2d 478 (1983), however, the court held that the defendant had failed to overcome the presumption of fairness and propriety set out in Swain. See also McCray, note 2, supra.
[5] The following cases are examined in Wheeler: Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946); Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946); Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972); and Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
[6] Wheeler and Soares have both supporters, see, e.g., Note, People v. Wheeler: Peremptory Challenges  A New Interpretation, 14 New Eng.L. Rev. 370 (1978), and critics, see, e.g., Saltzberg & Powers, Peremptory Challenges and the Clash Between Impartiality and Group Representation, 41 Md.L.Rev. 337 (1982), and Note, Peremptory Challenges and the Meaning of Jury Representation, 89 Yale L.J. 1177 (1980).
[7] The state's reliance on Francis v. State, 413 So.2d 1175 (Fla. 1982), and Dobbert v. State, 409 So.2d 1053 (Fla. 1982), is misplaced because neither of those cases deals with the question presented here.
[8] One commentator considers Thompson more workable than either Wheeler or Soares. Comment, Survey of the Law of Peremptory Challenges: Uncertainty in the Criminal Law, 44 U. Pitt. L.Rev. 673 (1983).
[9] As stated in Castor v. State, 365 So.2d 701, 703 (Fla. 1978):

The requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings.
[10] We agree with Thompson that the exclusion of a number of blacks by itself is insufficient to trigger an inquiry into a party's use of peremptories. It may well be that the challenges were properly exercised but that that fact would not be apparent to someone not in attendance at the trial. The propriety of the challenge, however, might be readily apparent to the judge presiding over the voir dire. We emphasize that the trial court's decision as to whether or not an inquiry is needed is largely a matter of discretion.
[11] At oral argument Neil's counsel agreed that any new test should apply to both sides.
[12] Because the United States Supreme Court has not ruled on this issue, we prefer to rely on our state constitution instead of engaging in an analysis of federal constitutional issues.
[13] "Neither the state nor the defendant is entitled to an unfair juror whose interest, biases or prejudices will determine his or her resolution of the issue regardless of the law and regardless of the facts." Smith v. Balkcom, 660 F.2d 573, 583 (5th Cir.1981).
[14] The record reflects the objections and the race of those prospective jurors.
[15] We find no merit to Neil's point regarding cross-examination of a witness.