## Commonwealth v. Tull

*Lawrence Harmelin, assistant district attorney,* for the commonwealth.
*M. Kami Smith,* for defendant.

SMITH, *J.,* April 6, 1987—Defendant, James Richard Tull, was charged on October 2, 1985 with sexually assaulting his paramour's seven-year-old daughter. On March 18, 1986, defendant's trial began before this court. Following voir dire, defense counsel objected to the jury panel on the grounds that the assistant district attorney had exercised his peremptory challenges in an unconstitutional manner when he struck all three black individuals on the venire. These objections were overruled. On March 19, 1986 a mistrial was declared on other grounds.

Defendant's second trial began before this court on April 22, 1986, at which time the prosecutor again exercised his peremptory challenges to remove three blacks from the venire and the only black alternate juror. Defense counsel again objected on equal protection grounds and at this time apprised both the prosecution and this court of *Batson v. Kentucky,* 106 S. Ct. 1712 (1986) which was pending before the U. S. Supreme Court. This court again overruled defendant's objections. The trial proceeded and defendant was ultimately convicted on April 24, 1986. Defense counsel timely filed a motion in arrest of judgment and a motion for a new

trial. In light of the recent decision in *Batson*,[1] which was handed down just six days after defendant's conviction, this court held an evidentiary hearing to determine whether the facts establish a prima facie showing of purposeful discrimination.

In light of the evidence presented at the hearing, we find that the facts establish a prima facie showing of purposeful discrimination and that the prosecution has failed to meet its burden of proof to rebut the presumption of such discrimination.

## DISCUSSION

In *Batson*, the Supreme Court concluded that a defendant may establish a prima facie case of purposeful discrimination solely on evidence concerning the prosecutor's exercise of peremptory challenges at defendant's own trial.[2] To establish this prima facie showing of discrimination, the court set forth a three prong test:

"The defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's

---

1. In *Griffith v. Kentucky*, 107 S. Ct. 708 (1987), the U.S. Supreme Court held that *Batson* applies retroactively to all state and federal cases pending on direct review.

2. In so holding, the court reaffirmed *Swain v. Alabama*, 380 U.S. 202 (1965) insofar as *Swain* holds that a state's purposeful or deliberate denial to blacks on account of their race to participate as jurors violates the Equal Protection Clause. However, the court recognized that *Swain* has commonly been interpreted to require proof of repeatedly removing blacks from the jury over the course of several cases in order to establish a violation of the Equal Protection Clause. The court rejected this evidentiary formulation as placing a crippling burden of proof upon the defendant and to this extent it overruled *Swain*. *Batson, supra.*

race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." 106 S. Ct. at 1723 (citation omitted).

In deciding whether defendant has raised a requisite showing, *Batson* directs the trial court to consider all relevant circumstances, including but not limited to, a pattern of strikes against black jurors and statements made and questions posed by the prosecution during voir dire. Once it is found that defendant has made a prima facie showing of discrimination, the burden shifts to the state to come forward with a "neutral explanation" for challenging the black jurors. From the evidence adduced at the hearing, we find that defendant did establish a prima facie showing of purposeful discrimination. Given the fact that the assistant district attorney struck all blacks at *both* the first and second trials, a pattern of strikes against black jurors emerges. At this point, the burden of proof shifted to the commonwealth to come forth with a neutral explanation for its exercise of peremptory challenges against the black jurors and to rebut the inference of purposeful discrimination.

In *Batson,* the court emphasized that the prosecutor's explanation need not rise to the level justifying the exercise of a challenge for cause. "But the prosecutor may not rebut the defendant's prima

facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in individual selections." *Batson* at 1723.

At the evidentiary hearing, the prosecutor testified as to the general criteria which he considered in selecting jurors in this particular case.[3] Since this case involved a sexual assault upon a young girl, the prosecutor testified that he was looking for housewives between the ages of 25 and 35, who were likely to have children of their own. The prosecutor was also looking for prospective jurors who appeared intelligent and open-minded. Beyond these general guidelines, the prosecutor testified that he had difficulty recollecting the specific reasons for striking the three black prospective jurors and the one black alternate. However, he did recall why he struck one of the blacks from the panel. He testified that when it came down to his seventh and final strike, he was faced with a "choice" between a young Caucasian woman and a young black woman. The prosecutor struck the black female because he felt that the red-

---

3. The assistant district attorney also testified as to the guidelines he used in selecting a jury for defendant's first trial, which ended in a mistrial. Although the prosecutor's removal of blacks from that panel is relevant in showing a possible pattern of discrimination, it is not relevant in determining whether defendant was denied a fair trial which ultimately resulted in defendant's conviction. Since it is the conviction resulting from the jury panel seated on April 21, 1986, which defendant seeks to have overturned, we consider the prosecution's explanation for its peremptory challenges only insofar as they relate to defendant's second trial.

headed, [Caucasian] woman, of punk-rock appearance, "must be possessed of the trait of 'open-mindedness' . . . and that he thought hers would be a pleasant face to see during the course of the trial."

The explanations offered by the prosecutor for his exercise of peremptory challenges are facially race neutral. However, the mere fact that the reasons offered are racially neutral on their face does not end the inquiry. *Batson* requires that the prosecutor give a "clear and reasonably specific explanation of his legitimate reasons for exercising the challenges." 106 S. Ct. at 1723-4. However, *Batson* fails to enunciate any clear standards by which the trial court can evaluate the prosecutor's explanation. Nor has this commonwealth put forth any such guidelines. Therefore, we find it helpful to refer to other states which have addressed this issue.

In *State v. Gilmore,* 103 N. J. 508, 511 A.2d 1150 (1986), the New Jersey Supreme Court stated that in evaluating the prosecution's explanation for its peremptory challenges, "the trial court must decide whether these are, on the one hand, genuine and reasonable grounds for believing that potential jurors might have situation-specific bias that would make excusing them reasonable and desirable . . . or on the other hand, sham excuses belatedly contrived to avoid admitting acts of group discrimination." (quoting *People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748 765 (1978)).

The Florida Court of Appeal has declared that a prosecutor's explanation for peremptories should not be accepted at face value and has set forth a standard for the court's evaluation of such explanations. In *Slappy v. State,* Fla. Ct. App. 3d Dist. no. 85-1530 (1987) the issue on appeal was whether the state made a bona fide showing that its use of peremptories was for reasons other than race. The

appellant contended that the trial court did not follow *State v. Neil*, 457 So.2d 481 (1984), when it accepted at face value the prosecution's explanation. *Neil* holds that there is an affirmative duty on the trial court to critically evaluate the proffered explanation and reject those race-neutral explanations that are not bona fide. *Slappy* set forth factors which serve to cast doubt on the legitimacy of a race-neutral explanation:

"(1) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically; (2) no examination or only a perfunctory examination of the challenged juror; (3) disparate examination of the challenged juror, i.e., questioning challenged venireperson so as to evoke a certain response without asking the same question of other panel members; (4) the reason given for the challenge is unrelated to the facts of the case; and (5) disparate treatment where there is no difference between responses given to the same question by challenged and unchallenged venireperson." *Slappy, supra.* The trial court must also evaluate the proffered explanation in light of the circumstances of the case and the judge's knowledge of trial tactics. *Id.*

In evaluating the prosecutor's explanation, we note the admonition of the California Supreme Court in *People v. Trevino*, 39 Cal. 3d 667, 70 P.2d 719 (1985). "The trial court must not consider the proffered justifications in terms of the district attorney's 'judgment' or 'sincerity' but must determine whether the ground of the challenge was a specific bias on the part of the individual juror." *Trevino, supra.* In the case at bar, we cast no aspersion on the prosecutor's judgment or his sincerity. However, in light of the factors to be considered in evaluating the prosecution's testimony at the evidentiary

hearing, we find that the prosecutor's inability to recall his reasons for striking the black jurors is insufficient to rebut the presumption of purposeful discrimination.[4]

In retrospect we acknowledge that perhaps this court should have required, upon defendant's motion, that the prosecutor state his reasons for exercising his peremptories after the selection process was completed. However, the law of Pennsylvania did not at that time require us to do so. We are sensitive to the situation in which the prosecutor finds himself. It has been almost a year since the Tull trial and the prosecutor has handled several trials in the interim. However, to allow a lack of recollection to serve as sufficient explanation as to why all black jurors were challenged would set a dangerous precedent. Therefore, we find that the proffered explanations do not rise to the level necessary to rebut defendant's prima facie evidence of discrimination. In accordance with the foregoing, we

## ORDER

And now, April 6, 1987, upon careful consideration of the testimony at the evidentiary hearing in the above matter, we find that the prosecution has failed to rebut the presumption of purposeful racial discrimination in the jury selection for defendant's trial. Defendant's conviction is hereby reversed and remanded for a new trial.

---

4. This is especially true in light of several cases in which the court found prosecutor's explanation to be insufficient even though such explanations were often very detailed. See *People v. Trevino,* 39 Cal.3d 667, 704 P.2d 719 *(1985); People v. Turner,* 42 Cal.3d 711, 726 P.2d 102 (1986).