547 So.2d 175 (1989)
Kirk Lector HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 87-2765.
District Court of Appeal of Florida, Fourth District.
June 7, 1989.
Rehearing and Rehearing Denied July 19, 1989.
*176 Richard L. Jorandby, Public Defender, Karen Ehrlich and Gary Caldwell, Asst. Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
Rehearing and Rehearing En Banc Denied July 19, 1989.
PER CURIAM.
Appellee, the state, exercised a peremptory challenge to excuse a black juror, Mrs. Mosley, from the panel. When appellant, the defendant, raised an objection arguing that the challenge was racially motivated, the state claimed that it excused Mrs. Mosley because she "yawned through the whole [voir dire] and didn't seem interested." The trial court permitted the state to excuse the juror. We reverse.
In the instant case, the defendant objected to the state's exercise of a peremptory challenge by raising a timely objection and demonstrating on the record that the challenged person was a member of a distinct racial group and that there was a strong likelihood that she was challenged solely because of her race. See State v. Neil, 457 So.2d 481 (Fla. 1984); Sampson v. State, 542 So.2d 434 (Fla. 4th DCA 1989). Furthermore, any doubt as to whether the defendant satisfied his burden of showing that the juror was challenged solely because of her race should be resolved in his favor. See State v. Slappy, 522 So.2d 18, 22 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). Since the defendant's objection was proper and not frivolous, the burden of proof shifted to the state to rebut the inference that its peremptory challenge was motivated by bias. Id. at 22.
To demonstrate that its peremptory challenge was racially neutral, the state was required to show that its reason for excusing the juror was reasonable, supported by the record, and not a pretext. Id. at 22, 23. The trial court apparently found, and we agree, that the state's explanation of not wanting to keep a juror who was "bored or inattentive" was reasonable, and not a pretext. Therefore, the remaining question raised by this appeal is whether the state's reason for excusing Mrs. Mosley was supported by the record.
In addressing this question, we are guided by our supreme court's recent decision in Slappy. In Slappy, the state exercised a peremptory challenge to excuse a black juror. Slappy, 522 So.2d at 19. In responding to the court's inquiry, the state explained that it excused the juror in part because "[h]er health doesn't seem to be very good. I just didn't want someone like that on the jury." Id. Although the trial court permitted the state to excuse the juror, that decision was reversed on appeal. The supreme court noted that "the record was far from clear that any such [illness] existed. A single question posed to the juror could have established the existence or nonexistence of illness." Id. at 23 n. 3. The court held that
the state must be prepared to support its explanations with neutral reasons based on answers provided at voir dire or otherwise disclosed on the record itself.
Id. at 23.
In the instant case, the record is "far from clear" that the juror was yawning *177 during voir dire. Neither the judge nor defense counsel acknowledged that he observed such behavior, and the juror was not questioned to substantiate the state's allegation. Therefore, the state could not show that its reason for excusing the juror was either "based on answers provided at voir dire or otherwise disclosed on the record itself." Id. Accordingly, the trial court erred in permitting the state to excuse the juror.
Finally, we find no error in the trial court's denial of the motion to suppress the evidence discovered in the automobile inventory search. See Robinson v. State, 526 So.2d 164 (Fla. 4th DCA 1988), aff'd, 537 So.2d 95 (Fla. 1989).
REVERSED AND REMANDED FOR A NEW TRIAL.
GUNTHER and STONE, JJ., concur.
HERSEY, C.J., dissents with opinion.
HERSEY, Chief Judge, dissenting.
It seems reasonably clear that our supreme court, in State v. Slappy, 522 So.2d 18, 23 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), has taken Florida one step beyond the position required by the Constitution of the United States, as applied in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on the issue of racial discrimination in the jury selection process. Whether or not we are persuaded that the philosophical underpinnings of either Batson or Slappy justify truncating the historically untrammeled strategic use of the peremptory challenge, we are bound to follow the dictates of the respective courts involved. It is no less a commitment to the eradication of racism from the judicial process, however, to apply a more cautious approach than one which assumes a racist motivation behind every peremptory challenge.
In the instant case, the state used a peremptory challenge against one black juror. Another black juror remained on the panel. The defense claimed that the challenge was racially motivated. No support for such a claim was offered.
The court required the state to justify the challenge. The prosecutor explained that the prospective juror was yawning and seemed disinterested. There was a substantial colloquy on the issue. The court sustained the peremptory challenge. This court reverses.
We obviously subscribe to the well-established and self-evident principle that even one racial strike is constitutionally impermissible. The rights of both the defendant and the challenged juror are diminished by such circumstances. That does not mean, however, that in every exercise of a peremptory challenge of a juror of the same race as the defendant, a presumption of impropriety arises. Rather, distillation of the applicable case law suggests the following:
The complaining party must first establish a "likelihood" that a challenge is discriminatory. There is no bright-line test to apply here, but "when the state engages in a pattern of excluding a minority without apparent reason" then such likelihood may be assumed. Slappy, 522 So.2d at 23 (emphasis added). It is not clear whether the criteria established by the earlier case of State v. Neil, 457 So.2d 481 (Fla. 1984), has been liberalized or abrogated. Neil requires the complaining party to show that the challenged persons are members of a cognizable group and that there is a strong likelihood that they are challenged because of their inclusion in the group rather than for a racially neutral reason.
Reconciling Neil with Slappy, it would appear that the complaining party, in the event of a single challenge, must persuade the court that the likelihood of discrimination exists; where a pattern can be shown, however, it may be assumed that the likelihood of discrimination exists. In either event, any reasonable doubt is to be resolved in favor of the complaining party.
Whether by a "showing" or by an "assumption," the court must then make a determination as to whether the challenger has made a prima facie case for discrimination. (If by "assumption," it may be a contradiction in terms for the court, then, to conclude that no prima facie case has *178 been made; but this nonetheless seems to be the import of the Slappy test.)
If the court finds that the challenger has made a prima facie case for discrimination, then inquiry is to be made into the reasons for the challenge. The reasons need not be sufficient to support a challenge for cause, but they must be racially neutral. The court is to determine whether the reasons advanced are such that some reasonable persons would agree. (This resembles the Canakaris[1] test of reasonableness.) However, reasonableness alone is not enough. It must also be shown that the reason given is supported by the record and the absence of pretext must be shown.
To recapitulate on the theme of Slappy, we have only to quote from its most cogent paragraph:
Once a trial judge is satisfied that the complaining party's objection was proper and not frivolous, the burden of proof shifts. At this juncture, Neil imposes upon the other party an obligation to rebut the inference created when the defense met its initial burden of persuasion. This rebuttal must consist of a "clear and reasonably specific" racially neutral explanation of "legitimate reasons" for the state's use of its peremptory challenges. While the reasons need not rise to the level justifying a challenge for cause, they nevertheless must consist of more than the assumption
that [the veniremen] would be partial to the defendant because of their shared race... . Nor may the [party exercising the challenge] rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." ... If these general assertions were accepted as rebutting a ... prima facie case, the Equal Protection Clause "would be but a vail and illusory requirement."
Part of the trial judge's role is to evaluate both the credibility of the persons offering the explanation as well as the credibility of the asserted reasons. These must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.
Slappy, 522 So.2d at 22 (citations omitted).
Astringent as it may be, Slappy does not compel  nor does it condone  the result we have reached here.
The defense suggests discrimination in the exercise of a peremptory challenge. No reason is ascribed to this accusation. There is absolutely nothing upon which to bottom shifting the burden of proof from the complainant to the challenger except the fact that both the defendant and the challenged juror were of the same race.
If we ignore that discrepancy and move to the second level of inquiry, we find the state advancing a plausible reason for the exclusion of the juror in question. Do we hold that no reasonable person could agree that a prosecutor might be justified in excusing a sleepy, disinterested juror? Do we not owe a certain amount of deference to the trial court's determination even in these difficult cases? It is true that no great harm results from what we do here. There will be a retrial. But our concern is with the precedent we establish by our rigid adherence to the Slappy dicta that if we err "it must be in the way least likely to allow discrimination." 522 So.2d at 22. To apply that maxim at the trial level will produce a salutory effect; to apply it from the appellate perspective frustrates the delicate balance which must be maintained between error-correction and second-guessing.
Logic suggests that appellant failed the test at both levels of inquiry. No "likelihood" was made out and the state offered a plausible reason for exercising its peremptory challenge.
Accordingly, and with apologies for its prolixity, I respectfully offer this dissent to the opinion of the majority.
NOTES
[1] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).