574 So.2d 136 (1991)
Andrew WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 71122.
Supreme Court of Florida.
February 7, 1991.
*137 Jan K. Dargel, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen. and Lauren Hafner Sewell, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Andrew Williams appeals from a judgment and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant was charged with robbing a Tampa bank and killing the bank guard. Testimony at trial was that on the morning of September 20, 1986, two black men entered the bank and spoke with the guard on duty. Several witnesses identified Williams as the person who fired the gun into the guard's chest. Williams was arrested in a house in Brooksville and the bank guard's gun was found during a search of the house.
In this appeal, Williams raises a number of issues, one of which is dispositive of the case. At one point in jury selection, the prosecutor peremptorily had excused two blacks. The defense raised a proper objection as required by our opinions in State v. Neil, 457 So.2d 481 (Fla. 1984), clarified, State v. Castillo, 486 So.2d 565 (Fla. 1986), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). At this point, the trial court required the prosecutor to provide an explanation as to the first but then cut off discussion before the state could provide any explanation as to the second black venire member.
Later, two other blacks were peremptorily stricken because of qualms about the death penalty, a valid reason. However, the state then proceeded to peremptorily excuse another black on grounds he could not understand the felony murder doctrine. The record, however, discloses that no questions about felony murder or other similar legal doctrines were put to this last venire member. The questions focused on occupation, home life, and the age of his children. This venire member also indicated no inability to recommend the death penalty in an appropriate case.
The central premise of Slappy was that "[i]f we are to err at all, it must be in the way least likely to allow discrimination." Slappy, 522 So.2d at 22. Slappy went on to explain that the peremptory challenge is uniquely suited to masking discriminatory motives, id. at 20, and thus must be vigilantly policed. Accordingly,
the issue is not whether several jurors have been excused because of their race, but whether any juror has been so excused, independent of any other.
Id. at 21 (emphasis in original). Whenever a sufficient doubt has been raised as to the exclusion of any person on the venire because of race, the trial court must require the state to explain each one of the allegedly discriminatory challenges.
In the present case there can be no doubt that the defense created sufficient doubt in the trial court's mind. Otherwise there would have been no need of requiring the state to explain one of the challenges. However, in preventing the state from giving an explanation as to the challenge of the second black venire member, the trial court clearly erred. Under Slappy, the trial court should have resolved all doubts in favor of the defense and conducted the inquiry.
We also believe the trial court erred with regard to the venire member excused because of an alleged inability to understand the concept of felony murder. The record simply fails to support this reason. Slappy requires that the reason given for the excusal must be supported in the record. Slappy, 522 So.2d at 23. As a result of these errors, this case must be remanded for a new trial in compliance with the requirements of Neil and Slappy.
Although the remaining issues are rendered moot by our disposition of the Neil/Slappy issue, we address two further issues for the instruction of the trial court. *138 In the penalty phase, the trial court found the aggravating factors of great risk to many persons and heinous, atrocious, or cruel. We believe the facts of this case clearly do not support either.
First, the trial court found the factor of great risk to many persons based on the fact that several other persons were present in the bank at the time of the robbery. We believe this factual situation, without more, is insufficient to support this factor. This factor is properly found only when, beyond any reasonable doubt, the actions of the defendant created an immediate and present risk of death for many persons. While we agree that Williams' actions created some degree of risk, we cannot say beyond a reasonable doubt that he created an immediate and present risk to the others in the bank. There is no evidence, for instance, of indiscriminate shooting in the direction of bank customers, but only of an intent to kill the bank guard.
Second, we do not believe the factor of heinous, atrocious and cruel was present. This factor is permissible only in torturous murders  those that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The facts of this case show only that Williams restrained the guard and then shot her with little delay. This cannot be deemed a torturous murder within the meaning of Dixon.
For the foregoing reasons, we reverse the judgment below and remand for new trial on all issues. On remand, the trial court shall abide by our opinions in Neil and Slappy as well as the views expressed here.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.