908 So.2d 1190 (2005)
Tammy WICKS, Appellant,
v.
PUBLIX SUPER MARKETS, INC., Appellee.
No. 2D04-2727.
District Court of Appeal of Florida, Second District.
August 31, 2005.
Robert L. Donald, Law Office of Robert L. Donald; and Joseph R. Gaeta of Joseph R. Gaeta, P.A., Fort Myers, for Appellant.
Jeffrey D. Kottkamp of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for Appellee.
PER CURIAM.
Affirmed.
LaROSE, J., and BLACK, ANTHONY K., Associate Judge, Concur.
CASANUEVA, J., Concurs with opinion.
CASANUEVA, Judge, concurring.
This case implicates the narrow but important issue of racial discrimination in the exercise of peremptory challenges to prospective jurors. The Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that it is constitutionally impermissible to strike a potential juror if the challenge is racially motivated. Batson's antidiscrimination test for peremptory challenges has been applied to private litigants in civil cases. *1191 Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Here, Ms. Wicks asserts that Publix's counsel improperly peremptorily challenged a prospective juror in violation of Batson and a similar line of Florida cases beginning with State v. Neil, 457 So.2d 481 (Fla.1984). After carefully scrutinizing the record I conclude, first, that the issue was not preserved for appellate review, and second, assuming that it had been, no violation of Batson or Neil occurred. A review of the record, with benefit of appellate hindsight, also suggests that counsel could have taken certain steps to better illuminate the record upon which the trial court ruled and which this court was called upon to review.
Ms. Wicks, an African-American, sued Publix for damages after she tripped and fell outside a Publix store in Fort Myers. At the commencement of her jury trial, the venire was initially questioned by the court. An African-American teacher was excused without objection because she was preparing for final exams. Other potential jurors were also excused until eighteen remained. This appeal centers around the excused of veniremember number 4, an African-American woman who worked at a television station.
During her questioning by the court, veniremember number 4 indicated prior contact with the legal system in a case involving a rental car company and her husband. She was a witness, and the matter was resolved after a nonjury trial. She testified that nothing in the way the case was handled would impact on her ability to be a fair juror.
Later in the process, Ms. Wicks' counsel examined veniremember number 4. This questioning established that her husband was employed in loss prevention for grocery stores, including Publix. He provided surveillance for the stores, possibly even at the store where Ms. Wicks fell. As to the former civil suit, veniremember number 4 indicated that the rental car company's position was that she and her husband had damaged the car. They resisted the claim because they did not want their insurance company to pay for damage that they did not cause.
The inquiry by Ms. Wicks' counsel also revealed that prospective juror number 4 had been involved in an automobile accident and sustained injury to her vertebrae that required chiropractic treatment. Although the accident had taken place seven or eight years previously, she still had occasional problems. She acknowledged that her insurance company compensated her for her medical bills but she received nothing for her pain and suffering.
Finally, plaintiff's counsel asked her how she felt about being selected as a juror, to which she responded: "Not a problem if it gets me out of work."
Publix's counsel then undertook its own questioning. When asked her reaction to the rental car suit, the veniremember responded: "Well, of course, my reaction, I didn't like it, because when we rented the car, they failed to maintain their car, so because we actually signed the contract, they felt like we were responsible for whatever damage, you know."
The court then proceeded to conduct challenges at sidebar while the prospective jurors remained in the courtroom. Publix exercised its first peremptory to veniremember number 4. Ms. Wicks' counsel noted for the record that veniremember number 4 was an African-American female and asked the court to inquire further. However, Ms. Wicks' counsel did not specifically assert that the challenge was impermissibly made on the basis of race. Nevertheless, the experienced trial court asked defendant's counsel to provide a *1192 race-neutral reason for the challenge. Two explanations were proferred: first, that the prospective juror had demonstrated inclination to be litigious and second, that counsel wanted to reach other jurors. The court accepted the reasons and sustained the challenge, noting that Ms. Wicks' counsel had "preserved [his] right."
Ultimately, both parties exhausted their allocation of peremptory challenges. A jury panel was sworn and, following cautionary instructions, was released for the evening. Neither counsel offered anything when the court then asked whether additional labors remained before court was recessed. At this point neither party had tendered an objection to the panel.
The following morning, just prior to the recall of the jurors, Ms. Wicks' counsel announced that he had done further research on his Neil objection the prior evening and was uncertain whether it was necessary to preserve that objection "as an objection to the panel." He then did so for the record, "in case some appellate court says I didn't renew it."
Following a jury trial and a zero verdict, this appeal ensued.

Preservation
To preserve a Neil inquiry for appellate review, more than a contemporaneous objection is necessary. In Joiner v. State, 618 So.2d 174 (Fla.1993), the defendant affirmatively accepted the jury after previously making a Neil objection. Our supreme court stated:
We do not agree with Joiner, however, that he preserved the Neil issue for review. He affirmatively accepted the jury immediately prior to its being sworn without reservation of his earlier-made objection. We agree with the district court that counsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn. We therefore approve the district court to the extent that the court held that Joiner waived his Neil objection when he accepted the jury. Had Joiner renewed his objection or accepted the jury subject to his earlier Neil objection, we would rule otherwise. Such action would have apprised the trial judge that Joiner still believed reversible error had occurred. At that point the trial judge could have exercised discretion to either recall the challenged juror for service on the panel, strike the entire panel and begin anew, or stand by the earlier ruling.
Id. at 176 (footnote omitted).
Here, the record is silent as to whether the plaintiff affirmatively accepted the jury. However, it is clear that at no time before the entire venire panel was discharged or before the conclusion of that day's proceeding was the objection renewed or the panel accepted with reservation or qualification. Thus, the trial court was afforded no opportunity either to seat the challenged veniremember or to strike the entire panel and begin anew with the remaining veniremembers. I would hold, under these facts, that the Neil objection was abandoned and the issue not preserved for appellate review. The subsequent day's efforts were ineffective to preserve this issue. Objections must be timely.
This case does not fall within the narrow exception to Joiner. In Ingrassia v. State, 902 So.2d 357 (Fla. 4th DCA 2005), the court considered the State's contention that the jury issue was not preserved because it was not explicitly renewed at the time the jury was empanelled. Noting that the trial court "specifically and repeatedly *1193 reassured counsel, in the course of the extensive colloquy, that the issue was on the record and preserved for appellate review," the court concluded that neither the State nor the trial court was misled into believing that the voir dire issue had been abandoned by reason of the failure to renew the objection. Id. at 359. Under these circumstances, the Fourth District held that the issue had been preserved for review. Here, however, there was neither an extensive colloquy nor repeated assurance from the trial court that the issue had been preserved. From my reading of the record I find no assurance from the trial court, only an acknowledgment of counsel's statement. In my view, Ms. Wicks' counsel's comment does not fall within the Ingrassia exception to Joiner. For these reasons, I conclude the objection was not preserved for appellate review.

Race-Neutral Reasons
Had the objection been preserved, the next step would be to determine the validity of the alleged race-based peremptory challenge with reference to procedures begun in Neil and then refined in Melbourne v. State, 679 So.2d 759 (Fla.1996). See State v. Johans, 613 So.2d 1319, 1321 (Fla.1993) (holding "that from this time forward a Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminating manner").
Initially, although it is preferable for an objecting party to articulate that the peremptory challenge is racially motivated or that it is being used discriminatorily, here Ms. Wicks' objection was sufficient. Clearly, the trial court understood the nature of the objection. To conclude otherwise would be to improperly elevate form over substance. Therefore, the court correctly sought a race-neutral reason from Publix.
One of the reasons defense counsel offered was his desire to reach other veniremembers. The supreme court has held that this reason does not satisfy the Neil requirement of a race-neutral reason. Although eliminating a prospective juror to reach another is a legitimate reason to exercise a peremptory challenge, in the Neil context, the attorney exercising the peremptory challenge must give nonracial reasons for challenging an African-American rather than other white veniremembers in the effort to make room for the new jurors counsel desires to have join the panel. Kibler v. State, 546 So.2d 710, 714 (Fla.1989). See also Henry v. State, 724 So.2d 657 (Fla. 2d DCA 1999); Perez v. State, 890 So.2d 371 (Fla. 3d DCA 2004). Because this reasoning was not developed, I would hold that the desire to reach other prospective jurors was not a race-neutral reason in this case.
The second basis articulated by Publix's counsel was that veniremember number 4 was litigious. The record reveals that the veniremember's husband was sued by a rental car company. Also, she had been in an automobile accident in which she sustained injuries, some similar to those claimed by Ms. Wicks. Although not a court action, the automobile accident did involve an insurance claim and compensation for medical bills only, not pain and suffering. These claims were similar to those advanced by Ms. Wicks. An inclination to be litigious, if supported by the record, is a facially race-neutral reason to challenge.
If the explanation is facially race neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained. The focus is upon the genuineness of the explanation. Shuler v. State, 816 So.2d 257, 258 (Fla. 2d DCA 2002). On review, deference is given to *1194 the trial court. Its ruling on the genuineness of a peremptory challenge will be sustained unless demonstrated to be clearly erroneous. On a cold record, a trial judge is not to be second-guessed. Rodriguez v. State, 753 So.2d 29, 41 (Fla.2000); Cunningham v. State, 838 So.2d 627, 630 (Fla. 5th DCA 2003). Although deferential, appellate review must still be meaningful. Dorsey v. State, 868 So.2d 1192, 1200-1201 (Fla.2003). Or, as stated by the United States Supreme Court, "[d]eference does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reviewing the trial court's decision to sustain alleged race-neutral challenges in the context of habeas relief).
While "litigious" may not be as precise a term as one would prefer, the trial court was present for all the questioning and was aware of all the information provided by the prospective juror. The trial court was well within its authority to conclude that these matters constituted a genuine basis for the exercise of the peremptory challenge, and the plaintiff failed in its burden to prove that the proffered race-neutral reason was pretextual.

Final Observations
This case illustrates the practical problems trial courts and counsel often confront when addressing a Batson issue and the need to insure the full development of the trial record for appellate review. With the wisdom afforded a Monday-morning quarterback, I offer a couple of suggestions.
In this case, the court held the juror challenge conference at sidebar within the sight of the venire. When the contention is made that a peremptory challenge has been exercised in an unconstitutional manner, it may be appropriate either to excuse the venire from the courtroom or to hold the Batson hearing elsewhere. Because the Batson test seeks to apply an objective standard or measurement to the "inherently subjective reasons that underlie use of a peremptory challenge," Miller-El v. Dretke, ___ U.S. ___, ___, 125 S.Ct. 2317, 2340, 162 L.Ed.2d 196 (June 13, 2005) (Breyer, J., concurring), the courtroom setting may inhibit the development of the necessary record. For example, cautious counsel, particularly concerned that the challenged veniremember might ultimately serve on the jury, might offer only a brief explanation to avoid the possibility that the objection would be overheard.
Next, the Batson framework requires the nonmoving party to offer a race-neutral reason for the challenge. "[I]f the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." Miller-El, ___ U.S. ___, ___, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196. Because of the critical importance of identifyingclearlythe rationale behind the strike, counsel may desire to have all or a portion of the record read back. Often, short notations or abbreviations on a legal pad are not sufficient for counsel to fully recall the basis for the challenge.
Justice Breyer, in his Miller-El concurrence, observed that Batson embodies defects intrinsic to the task of measuring whether impermissible racial reasons prompted the use a peremptory challenge. Id. at 2340. To ensure the proper implementation of the Batson procedures, trial counsel should take every step possible to develop the record fully to facilitate both the trial court in its decisionmaking and the appellate court in its review.