559 So.2d 327 (1990)
Robert KNIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1026.
District Court of Appeal of Florida, First District.
April 3, 1990.
Rehearing Denied May 4, 1990.
*328 Louis O. Frost, Jr., Public Defender and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen. and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ALLEN, Judge.
Robert Knight appeals his conviction and sentence for burglary of an occupied structure. Because he had previously been convicted of several felonies, including recent convictions for two robberies, he was sentenced as a "habitual violent felony offender." He contends that the jury was selected in a manner violative of his rights under Article I, Section 16 of the Florida Constitution, as interpreted in State v. Neil, 457 So.2d 481 (Fla. 1984). He also challenges his classification and sentencing as a habitual violent felony offender. We find that the trial court's failure to sustain Knight's objections to the prosecutor's exercise of peremptory challenges was within the broad discretion accorded trial courts in making such rulings. We also find no error in the classification and sentencing of Knight as a habitual violent felony offender. Consequently, we affirm.
Although four of the six jurors who ultimately served on the jury below were black, appellant nevertheless contends that other black potential jurors were excused in violation of the holding in Neil. He argues that the trial court committed error in denying his challenge to the appellee's exercise of its peremptory challenges.
In Neil, the Supreme Court held that Article I, Section 16 of the Florida Constitution extends a protection against improper bias in selection of juries that exceeds the current federal guarantees. The Supreme Court reaffirmed and expounded upon the Neil holding in State v. Slappy, 522 So.2d 18 (Fla. 1988). In Reed v. State, 560 So.2d 203 (Fla. 1990), the court provided a summary of its holdings in Neil and Slappy, as follows:
In State v. Neil, 457 So.2d 481 (Fla. 1984), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied [487 U.S. 1219], 108 S.Ct. 2873 [,101 L.Ed.2d 909] (1988), we established procedures that were intended to abolish the discriminatory exercise of peremptory challenges. The defense must make a prima facie showing that there has been a strong likelihood that the jurors have been challenged because of their race. If the judge makes that finding, the burden shifts to the prosecution to show valid nonracial reasons why the individual minority jurors were struck. Neil.

Reed, 560 So.2d at 205.
During the course of jury selection below, the prosecutor exercised five peremptory challenges, four of which were used to excuse black potential jurors. Although the trial court did not find that appellant had satisfied his initial Neil burden of showing a "strong likelihood" that the black potential jurors had been challenged because of their race, the prosecutor nevertheless voluntarily gave her reasons for each of the four challenges.
In evaluating the reasons given by the prosecutor, the trial court was required to determine whether "some reasonable persons would agree" that the reasons given by the prosecutor were based upon valid nonracial considerations. Slappy, 522 So.2d at 23. We find that reasonable persons would agree that the challenges as to three of the prospective black jurors were valid. One of these three had a hearing problem and was on medication. The second had a felony conviction record and had recently been prosecuted by the local prosecutor's office. The third seemed to be either evasive or to have a memory problem, as he said he was unable to remember two jobs he had recently held. *329 The sufficiency of the prosecutor's explanation for excusing the other peremptorily challenged black prospective juror, Miss Bellamy, was not as persuasive, however, as the explanations given for the other three challenges.
In explaining her reasons for peremptorily challenging Miss Bellamy, the prosecutor said:
Miss Bellamy is a single mother has [sic] four children. She does not own a home, and her job is being a cook. That is not a good state juror.
While a juror's occupation often provides a reasonable basis for the exercise of a peremptory challenge, it may not suffice when offered in the context of a Slappy inquiry, unless the occupation is shown to have some relationship to the case at hand. Here, we have difficulty understanding how Miss Bellamy's occupation as a cook had any relationship to a prosecution for burglary of a dwelling. We also have difficulty understanding how Miss Bellamy's marital status or her number of children had any potential relationship to the case below, or to her potential partiality. The other reason given by the prosecutor for challenging Miss Bellamy was that she was a renter, rather than a home owner. While a tenuous argument might be made that a home owner would be more likely to convict in a residential burglary case than would a renter, we note that two unchallenged jurors were also renters. In short, the prosecutor's showing as to Miss Bellamy was extremely marginal, at best.
We can foresee circumstances under which the parent of a young child could be properly challenged for reasons independent of the facts of a particular case. The parent of a young child could clearly be challenged where it is developed upon the record that the parent is distracted from the work at hand due to some particular circumstance relating to the child. For example, it might appear that a prospective juror's child is ill and that the juror is gravely concerned due to the illness. A further example would be where it appears that a prospective juror has serious concern for his or her child because suitable arrangements have not been made for the care and supervision of the child during the parent's jury service. Any such special circumstance should, however, be developed upon the record and articulated by the attorney giving explanation for the challenge. See Slappy, 522 So.2d at 23. In the present case, no such special circumstance was developed, nor was any such circumstance articulated by the prosecutor.
Despite our concerns as to the challenge of Miss Bellamy, we must look to the total context of the trial court's ruling that the challenges were not based upon racial considerations. In this regard, Justice Barkett wrote for the Supreme Court in Slappy, as follows:
Part of the trial judge's role is to evaluate both the credibility of the person offering the explanation as well as the credibility of the asserted reasons. These must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record.

Slappy, 522 So.2d at 22 (emphasis supplied).
In the more recent Reed opinion the Supreme Court said:
Within the limitations imposed by State v. Neil, the trial judge necessarily is vested with broad discretion in determining whether peremptory challenges are racially intended. State v. Slappy. Only one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved... . In trying to achieve the delicate balance between eliminating racial prejudice and the right to exercise peremptory challenges, we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a "feel" for what is going on in the jury selection process.
Reed, 15 F.L.W. at S116, 560 So.2d at 206.
Upon application of the above-quoted language from the Slappy and Reed opinions to the trial court's ruling in the present case, we cannot say that the trial court committed error. Clearly valid reasons *330 were given for three of the four challenges in issue. Additionally, although the prosecutor did not exhaust her peremptory challenges, four of the six persons who ultimately served on the jury were black. In fact, it appears that the fourth black juror was added to the panel as a result of the prosecutor peremptorily challenging a white prospective juror. If more than one of the challenges in issue had caused the level of concern we have regarding the challenge of Miss Bellamy, we might say that reversible error had occurred. However, upon the record before us, we simply cannot say that the trial court erred.
Appellant also challenges his classification and sentencing as a habitual violent felony offender under Section 775.084, Florida Statutes (Supp. 1988). We find no error in the trial court's classification and sentencing of appellant who had an adult criminal record of six prior convictions, including convictions for robbery in 1986 and 1988, as a habitual violent felony offender under the statute.
We find appellant's remaining arguments, including his constitutional challenges to the habitual violent felony offender statute, to be without merit.
Accordingly, the judgment and sentence appealed from are affirmed.
BOOTH and MINER, JJ., concur.