624 So.2d 833 (1993)
Richard SUGGS a/k/a Timothy Bomar a/k/a Dennis Bomar, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1641.
District Court of Appeal of Florida, Fifth District.
October 1, 1993.
*834 James B. Gibson, Public Defender, and James R. Wulchak, Chief, Appellate Div., Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David G. Mersch, Asst. Atty. Gen., Daytona Beach, for appellee.

ON REMAND FROM THE SUPREME COURT
W. SHARP, Judge.
Pursuant to the direction of the Florida Supreme Court, 620 So.2d 1231, we issue the following opinion to resolve the State v. Neil, 457 So.2d 481 (Fla. 1984) issue involved in this case. Suggs was found guilty of grand theft after his jury trial. He argues the trial court erred when it allowed the state attorney to back-strike the only black member of the jury who had been (at that point) accepted by both sides for service on the jury panel, through the exercise of a peremptory challenge. We reverse.
During voir dire, the state attorney (Faddis) questioned and talked with many members of the venire, including the juror in question, Green. Faddis inquired about Green's job and responsibilities as a supervisor for UPS. Nothing remarkable occurred during that exchange.
When the public defender (Jewett) took his turn at voir dire, he advised the venire that his client would probably testify at trial. However, he told them Suggs had prior criminal convictions. He asked what effect that information would have on the prospective jurors' thinking.
To juror Green, Jewett directed the following question: "Will that make you judge his testimony?" Green replied, "Make me listen more intently to the actual evidence in this case." To another member of the venire (White), Jewett posed the same question. White said, "I'd just listen to the facts." White was not later struck by a peremptory challenge, but it is also clear from the record that he was not seated as a prospective juror.
The venire was then excused and the process of selecting the jury commenced. Neither side challenged any prospective juror for cause. Both initially accepted Green as juror number one. The public defender exercised three peremptory challenges against jurors number three, four and eight. Both accepted juror number nine. At that point, the state attorney back-struck Green. Both accepted juror number ten.
Then, Jewett objected. He said, "Your Honor, we'd ask that the State give reasons why Mr. Green was struck, the only black juror we've gone through?" Faddis argued that the public defender had not made a sufficient showing to require him to explain his reasons for striking Green. However, the judge pressed him to state his reasons.
Faddis admitted he did not have a reason he could fully express. He said he had a "bad feeling" about Green, which stemmed from his response to Jewett's question at voir dire concerning Sugg's prior criminal record. "He said I'm going to have to look at the evidence a little bit more carefully... . That's the response I didn't like." Faddis *835 did not articulate why he disliked Green's response, nor does the record support any inference his objection was based on the manner or tone of voice employed by Green in his response.
After hearing argument and considering the conduct of the trial up to that point by both attorneys, the trial judge ruled that he did not think there was a pattern of racial discrimination at this trial by either side. Further, he determined that the state's challenge of Green (in particular) was not based on a racial or other improper motive. He said, "When you start striking based on race or religion or nationality ...  that's something else again. I don't have any indication that is the case here. So I'm going to allow the strikes." Jewett accepted the jury panel "other than our prior objection to striking of number one [Green]."
Although Jewett in this case may not have made a sufficient showing that the state's peremptory challenge as to Green was likely motivated by racial bias,[1] the trial judge gave him the benefit of the doubt,[2] and initiated a Neil inquiry.[3] He also made a clear ruling on the record rejecting any improper basis for the challenge. Most reversals for improper peremptory challenges in Florida have occurred in cases where the trial judge does not make a Neil inquiry or a clear ruling. See Reynolds v. State, 576 So.2d 1300 (Fla. 1990); Bryant v. State, 565 So.2d 1298 (Fla. 1990); Kibler v. State, 546 So.2d 710 (Fla. 1989); State v. Neil, Johans v. State, 587 So.2d 1363 (Fla. 5th DCA 1991).
Where the trial judge conducts a Neil inquiry and finds the challenge was not racially motivated, that finding must be given great deference by an appellate court. Files v. State, 586 So.2d 352 (Fla. 1st DCA 1991); Green v. State, 583 So.2d 647 (Fla. 1991). The trial judge is the fact-finder in this drama, and must resolve all questions of credibility. Part of the basis for the trial judge's findings is his or her observation of the attorneys' interactions with the venire and each other. Entering into this determination are things not encapsulated in the record on appeal; i.e., tone of voice, speech pattern, facial expression, and body language. Further, as our Florida Supreme Court has said, the appellate courts must rely primarily on the inherent fairness and color blindness of the trial judges to see that peremptory challenges are not exercised to mask improper motives or bias. Reed v. State, 560 So.2d 203 (Fla. 1990).
It appears that the standard of review for an appellate court in a case such as this one is to determine whether reasonable persons would agree the peremptory challenge was exercised for racial or other improper considerations and whether the reasons for the challenge are supported by the record. State v. Slappy, 522 So.2d 18 (Fla. 1988); Knight v. State, 559 So.2d 327 (Fla. 1st DCA 1990). The reasons given for a peremptory challenge need not rise to the level of a challenge for cause,[4] but they must stem from something established by the record which is race-neutral. Slappy.
The problem in Knight was that although the reasons given for striking three of the black jurors were rational and supported by the record, the reasons for striking the fourth juror made no sense to the appellate judge panel, although they were supported by the record. As summarized in the opinion, the fourth juror was challenged because she was single, had four children, did not own her own home, and she worked as a cook. The majority opinion expressed surprise that a prosecutor would find these circumstances make a person undesirable as a juror, but since the trial judge expressly found that no improper racial discrimination was involved in the strike, it declined to find error.
This case is somewhat like Knight. As in Knight, the five categories for finding pretextual strikes outlined in Slappy do not exist: 1) alleged group bias not shown to be shared by the juror in question; 2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror; 3) singling the juror out for special questioning designed *836 to evoke a certain response; 4) a prosecutor's reason is unrelated to the facts of the case; and 5) a challenge based on reasons equally applicable to a juror who was not challenged. 522 So.2d at 22. However, the reason given for striking Green is not clear and logical, nor susceptible of appellate assurance it was not based on racial or other impermissible grounds.
The primary reason for striking Green was the prosecutor's reaction to his answer to a question posed by Jewett. From this he got a "bad feeling." Bad feelings are not sufficient to withstand a Neil inquiry because it would be too easy to mask a racially motivated (or other improper) basis for exercising a peremptory challenge. See Alen v. State, 596 So.2d 1083 (Fla. 3d DCA 1992) (Hubbard, J., concurring). Had the prosecutor in this case been able to tie his "bad feeling" to a specific answer, to a specific question in the record, our decision would have been otherwise. But the response here does not on its face appear logically adverse to the state's case. It appears to be, at best, a non-reason.[5]
If the prosecutor's "bad feeling" had been based on Green's tone of voice or facial expression used in answering the question, that should have been stated on the record and called to the attention of the trial judge for confirmation. The absence of any record manifestations of lack of racial bias requires a reversal in this case since there is no objective basis in this record upon which we can seize to support the trial judge's exercise of discretion to allow the striking of this juror from the panel.[6]
REVERSED and REMANDED.
DIAMANTIS, J., concurs.
DAUKSCH, J., concurs in conclusion only, without opinion.
NOTES
[1] See Taylor v. State, 583 So.2d 323 (Fla. 1991).
[2] See State v. Slappy, 522 So.2d 18 (Fla. 1988).
[3] State v. Neil, 457 So.2d 481 (Fla. 1984).
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[5] "If the party shows that the challenges were based on the particular case on trial, the parties, or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and the jury selection should continue." Neil, 457 So.2d at 487.
[6] See Brown v. State, 624 So.2d 299 (Fla. 3d DCA 1993); Stroder v. State, 622 So.2d 585 (Fla. 1st DCA 1993).