664 So.2d 1109 (1995)
Rafael NUNEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-1086.
District Court of Appeal of Florida, Third District.
December 13, 1995.
*1110 Bennett H. Brummer, Public Defender and Howard K. Blumberg, Assistant Public Defender and Frank P. Triola, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Douglas L. Glaid, Assistant Attorney General, for appellee.
Before JORGENSON, LEVY and GREEN, JJ.
PER CURIAM.
On this appeal, Rafael Nunez challenges his conviction and sentence for aggravated stalking. We reverse and remand for a new trial where we conclude that the State failed to cite race neutral reasons for its exercise of a peremptory strike against a prospective African American female juror in response to a Neil inquiry.[1]
During voir dire, a male venireperson indicated that he had personally known of a case of domestic violence which had gone unreported and stated that "when domestic violence is reported, it is probably because it got to a point that it was out of hand." In response to this statement, the prosecutor questioned another panel member, Ms. Lane, an African American female and the following transpired:
[Prosecutor]: ... Ms. Lane, how do you feel about that statement that he made?
Ms. Lane: To me what I hear from him, he was involved with the situation, okay. And that's why he can't really judge, it's because he was involved. He felt the lady was victimized, but sometimes you don't really know the whole situation.
The only thing you are going to go on [sic] who you are closer to, and whatever the person is you are going to believe that. That's that feeling from him.
[Prosecutor]: You think in cases involving domestic violence, or domestic relationships is [sic] more difficult for you to make a decision because there is a relationship there?
Ms. Lane: Not difficult, you have to hear both sides of the story and make a decision from that, and is best not to know who the parties are.
[Prosecutor]: Are you going to think, in any event, there's more going on because there is a domestic relationship, more than just what meets the eye?
Ms. Lane: I agree.
[Defense]: Objection. Question is vague.
[The Court]: Sustained. I sustained the objection.
[Prosecutor]: The objection was to vagueness? Can I ask her to explain her answer?
[The Court]: Let me just ask that you clarify. You can't read between the lines. In a trial you have to base it on the evidence.
Ms. Lane: I agree.
[Prosecutor]: That's exactly my point. Are you going to base your decision on the evidence, or read between the lines and think, there is a domestic relationship here, I will look beyond that?
Ms. Lane: I have to judge what is presented in the Court, then have my position from there. I can't read between the lines. I'm not there. I don't know the parties. I can only go on what I heard [sic] in the Court, and base my decision on that.
The prosecutor asked no further questions of Ms. Lane but then asked all of the remaining venirepersons whether they agreed with the sentiments expressed by Ms. Lane. All of the panel responded in the affirmative.
*1111 When the questioning was concluded by both sides, the State exercised its first peremptory strike against an African American female (not Ms. Lane) without objection. When the state sought to exercise its second peremptory strike against Ms. Lane, the defense brought it to the court's attention that the State had utilized its peremptory strikes only against African American females and requested a neutral reason for the strike. The trial court properly found that the State was exercising its peremptory challenges only against a distinct group and requested the prosecutor to provide neutral reasons for its proposed strike of Ms. Lane. In response, the prosecutor said:
She [Ms. Lane] had said even though she would not read between the lines, it was my observation she was curious to catch someone in a lie. My perception from her saying that, is that she is precisely going to be looking for glitches in the testimony. Specially [sic] conflict of testimony that she will be looking over, things that are actually not there. Based upon that, that's why I move to strike.
The trial court concluded over the defense's protestation that the State had provided a race-neutral reason for its peremptory challenge of Ms. Lane:
[Defense]: May I respond. There has to be something on record. The prosecutor's observations are not reasonable.
[The Court]: However, her expression "reading between the lines" is more than a pretextual reason to excuse someone.
[Defense]: I believe it was the prosecutor reading the statement. We would have to go back to the actual testimony.
[The Court]: No. They were hers. I find it was a race neutral reason, and she is excused.
[Defense]: Over defense's objection, for the record, please.
At the conclusion of the selection process and prior to the juror being sworn, the defense steadfastly refused to tender or accept the jury. In so doing, we find that Nunez sufficiently preserved for appellate review his objection to the State's peremptory challenge of Ms. Lane under Joiner v. State, 618 So.2d 174 (Fla. 1993).
In Neil, the Florida Supreme Court held that race-based peremptory challenges violate the defendant's right to an impartial jury under article I, section 16 of our state constitution. 457 So.2d at 486. There, the court recognized that "the primary purpose of peremptory challenges is to aid and assist in the selection of an impartial jury." Id. "It was not intended that such challenges be used solely as a scalpel to excise a distinctive racial group from a representative cross-section of society." Id.
Initially, a party exercising a peremptory challenge enjoys a presumption that the challenge is being made in a nondiscriminatory manner. See State v. Johans, 613 So.2d 1319, 1321 (Fla. 1993); Neil, 457 So.2d at 486; Fernandez v. State, 639 So.2d 658 (Fla. 3d DCA 1994); Parrish v. State, 540 So.2d 870 (Fla. 3d DCA), rev. denied, 549 So.2d 1014 (Fla. 1989). The party objecting to the use of a peremptory challenge has the burden of demonstrating on the record that the challenged venireperson is a member of a cognizable racial, ethnic, religious or gender group and that the peremptory challenge is being used in a discriminatory manner (i.e. the challenge is being exercised solely because of membership in the cognizable group). See Johans, 613 So.2d at 1321; Fernandez 639 So.2d at 660. Once the trial court satisfies itself that this initial burden has been met, the burden then shifts to the party attempting to exercise the challenge to proffer neutral and nonpretextual reasons for the challenge which are supported by the record. See Floyd v. State, 569 So.2d 1225, 1229 (Fla. 1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Fernandez, 639 So.2d at 660. The trial judge has an affirmative duty to evaluate both the credibility of the person offering the explanation as well as the credibility of the asserted reasons. Slappy, 522 So.2d at 22. These must be weighted in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record. Id. Further, if the proffered explanation is challenged by opposing *1112 counsel, the trial court must review the record to establish record support for the reason advanced. Floyd, 569 So.2d at 1229.
Applying this established procedure to the instant case, we conclude that the trial court improperly allowed the prosecutor to strike Ms. Lane from the jury panel where based upon the record, the state's proffered reasons for the exercise of the challenge can only be deemed pretextual. We note first that there was absolutely no record support for the prosecutor's asserted observation that Ms. Lane was interested in "looking for glitches in the testimony" or ferreting out fabrications in the testimony where none otherwise existed. Therefore, we find that the prosecutor's "observation" about Ms. Lane could not be deemed a race neutral reason when it could not be tied to a specific answer to a specific question on the record. See Suggs v. State, 624 So.2d 833, 836 (Fla. 5th DCA 1993) (prosecutor's "bad feelings" about a prospective juror were insufficient to withstand a Neil inquiry when such feelings cannot be tied to a specific answer to a specific question). If the State truly did not believe Ms. Lane when she assured the court that she would not "read between the lines" while listening to the evidence, it is most telling to us that the State never asked her any follow up questions to bolster its perception that she was not being entirely candid with the court. Indeed, even more telling, we think, is the fact that the prosecutor went on to get the remaining members of the venire panel to agree with the sentiments expressed by Ms. Lane. Given this state of affairs on the record, we find that the State's proffered reason for its challenge of Ms. Lane did not on its face appear to be logically adverse to the State's case and, at best, was a nonreason. Suggs, 624 So.2d at 836. It appears that this most distinguished trial judge was erroneously led to accept the State's proffered reason as a result of the court's own inaccurate recollection of the voir dire questioning of Ms. Lane. This unfortunate situation could have easily been remedied if the trial court would have acceded to the defense's request for a review of Ms. Lane's voir dire testimony. While we are not insensitive to the tremendous pressures and time constraints placed on our trial judges (particularly those assigned to the criminal division), we must remind them nevertheless that during a Neil inquiry, our supreme court has placed an affirmative duty on their part to review the record to establish record support for proffered neutral reasons if those reasons are challenged by opposing counsel. See Floyd, 569 So.2d at 1229.
Thus, for all of the foregoing reasons, we must reverse and remand for a new trial. In light of this fact, we do not reach the remaining issues raised on this appeal.
Reversed and remanded for a new trial.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla. 1984).