605 So.2d 492 (1992)
William MILLER, Appellant,
v.
The STATE of Florida, Appellee.
No. 91-00061.
District Court of Appeal of Florida, Third District.
September 1, 1992.
*493 Bennett H. Brummer, Public Defender and J. Rafael Rodriguez, Specially Appointed Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Giselle D. Lylen, Asst. Atty. Gen., Miami, for appellee.
Before BASKIN, GERSTEN and GODERICH, JJ.
PER CURIAM.
The defendant, William Miller, appeals from a final judgment of conviction and sentence for second degree murder. We affirm.
The defendant was charged with one count of first degree murder. He was accused of killing a man in a barroom fight with whom he had an argument earlier in the day. The witnesses stated that the defendant had obtained a gun, threatened to kill the victim, and then shot him three times. The victim died the following day.
The first issue in this case is whether the trial court erred in not striking the jury panel due to a violation of the dictates of Neil v. State, 457 So.2d 481 (Fla. 1984), clarified sub nom., State v. Castillo, 486 So.2d 565 (Fla. 1986). During jury selection, the state exercised peremptory challenges on three black jurors: (1) Mr. Goodman because he had been charged with a crime, he purported to be a criminal justice major, and he would want more than one witness to convict; (2) Ms. Smith because she stated that she had problems in the past with a police officer at her job, and that she too would want more than one witness; and (3) Ms. Gordon because she had been a witness to a barroom shooting. The defendant objected and requested a Neil inquiry. The trial court found that the one-witness reason was pretextual and not based on good faith. However, the court ruled that the other reasons offered were race-neutral and allowed the peremptory challenges.
*494 In response to the court's inquiry, a party must show "that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race." Neil, 457 So.2d at 487. A careful review of the record reveals that of all the potential jurors only Mr. Goodman had been personally charged with a crime and only Ms. Smith had a problem at work, where an officer's version of the story was believed over her version of the story. Moreover, several potential jurors had witnessed barroom fights, but only Ms. Gordon had been at a bar when a shooting occurred. The fact that Ms. Gordon was involved in an incident strikingly similar to the facts of the instant case provides sufficient justification for the use of a peremptory strike.
The reasons provided for all three peremptory strikes were directly related to the case at bar and were not racially motivated. See State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); Neil, 457 So.2d at 481. Additionally, "[o]nly one who is present at trial can discern the nuances of the spoken word and the demeanor of those involved." Reed v. State, 560 So.2d 203, 206 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). Therefore, the trial court was justified in its determination that the strike was not racially motivated since it was in the best position to evaluate the validity of the reasons given to justify the use of a peremptory challenge.
The second issue is whether the trial court erred in not excluding evidence of the defendant's prior federal convictions. Prior to trial, the defendant asked the state to produce certified copies of the defendant's prior federal convictions. The state was only in possession of an F.B.I. rap sheet, but was attempting to get certified copies of the convictions from Atlanta, Georgia. During a side bar conference, the prosecutor informed the court that she had sent four separate requests to obtain certified copies of the four federal convictions. The trial court decided that it would allow the state to use the prior convictions for impeachment purposes based upon the good faith representations made by the state.
The good faith requirement is enforced by mandating that the records of prior convictions stand ready to come into evidence. Alvarez v. State, 467 So.2d 455, 456 (Fla. 3d DCA), rev. denied, 476 So.2d 675 (Fla. 1985). "The requirement that the attorney have evidence necessary for impeachment merely assures that he will not ask questions which suggest a certain set of facts in the absence of a good faith belief that those facts are true." Alvarez, 467 So.2d at 456 (citations omitted). In the case at bar, the state had a good faith belief that the four federal convictions had occurred and used due diligence to try to obtain the certified copies of the convictions. Therefore, we find that the trial court did not err in admitting the evidence of the defendant's prior convictions.
The third issue is whether the trial court erred in not granting a mistrial or in not giving a curative instruction when a witness referred to the defendant's "previous dealings" with guns and ownership of guns. "Relevant evidence is inadmissable if its probative value is substantially outweighed by the danger of unfair prejudice... ." § 90.403, Fla. Stat. (1991) (emphasis added). The testimony complained of cannot be said to imply collateral bad acts of the defendant since there is no indication that the "previous dealings" were illegal and since the mere ownership of one or several guns does not violate any law. The defendant was charged with first degree murder, therefore, any evidence as to whether he requested that his gun be brought to him was highly relevant and admissible on the issue of premeditation to rebut the defendant's contention that he acted in self defense, which the defendant's counsel raised during his opening argument. See United States v. Watkins, 537 F.2d 826, 827 (5th Cir.1976). Therefore, the trial court did not err in admitting the witness' testimony.
The fourth issue is whether the trial court abused its discretion in not permitting the jury to have the testimony of two *495 witnesses read back to them. Rule 3.410, Florida Rules of Criminal Procedure states, in pertinent part that: "the court may give [the jury] such additional instructions or may order such testimony read to them." (emphasis added). "Under Fla.R.Crim.P. 3.410, it is within the trial court's discretion to have the court reporter read back testimony of the witnesses upon the request of the jury." DeCastro v. State, 360 So.2d 474, 475 (Fla. 3d DCA 1978), cert. den., 368 So.2d 1365 (Fla. 1979) (citations omitted).
This court has repeatedly affirmed a trial court's decision to not read the requested testimony to the jury if it was not practical. See DeCastro, 360 So.2d at 474 (not practical where there was extensive, long testimony and a physically exhausted court reporter); Simmons v. State, 334 So.2d 265 (Fla. 3d DCA 1976) (impractical where type-written copy of the requested testimony was not available and court reporter physically incapable of reading seven hours of testimony back to jury); Jenkins v. State, 317 So.2d 114 (Fla. 3d DCA 1975) (court reporter not available). Similarly, in the instant case, the trial court ascertained the impossibility of obtaining the testimony after finding that a transcript had not yet been prepared and learning that the court reporter did not have her notes with her. Accordingly, the trial court exercised its sound discretion in its ruling not to have the witnesses' testimony read and its instruction to have the jury rely on their best recollection of the testimony. There being no abuse of discretion, we find no error.
We find that the defendant's last point on appeal lacks merit. Based upon the foregoing reasons, we affirm the defendant's conviction and sentence.
Affirmed.