778 So.2d 500 (2001)
Ruben Adolphus SYMONETTE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-1202.
District Court of Appeal of Florida, Third District.
February 28, 2001.
*501 Bennett H. Brummer, Public Defender, and Louis Campbell and Shaundra L. Kellam, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General, and Regine Monestime, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and SORONDO and RAMIREZ, JJ.
SORONDO, J.
Ruben Adolphus Symonette, defendant, appeals from a final judgment of conviction and sentence. His sole issue challenges the trial court's allowance of the state's peremptory challenge of prospective juror Blount, an African-American. We affirm.
During a very contentious jury selection process the state exercised five of its six peremptory strikes to remove African-Americans from the jury. The first strike was used to remove juror Myers. The state first sought to strike Mr. Myers for cause because he had been arrested three times. This motion was denied and the state announced its desire to exercise a peremptory challenge. Defendant asked for a race-neutral reason and the court ruled that the reasons proffered in support of the cause challenge were both raceneutral and genuine. See Heggan v. State, 745 So.2d 1066, 1068 (Fla. 3d DCA 1999)("A reading of this exchange clearly indicates that the judge accepted the state's proffered reason in support of its motion to exclude the juror for cause as its reason for exercising the peremptory challenge. Compliance with the Melbourne[1] analysis does not require the incantation of magical words.")(footnote added).
The next juror challenged was Mr. Blount. When the court called Mr. Blount's name the prosecutor moved to excuse him for cause on the grounds that the prospective juror had said that burglary was not a serious crime. Defense counsel responded that Mr. Blount had not said that burglary was not a serious crime. Rather, he said that what happened to him had happened before and he had simply chosen not to proceed.
The court concluded that the proffered reason was insufficient to exclude the juror for cause. The state then exercised a peremptory challenge to which the defendant objected on Melbourne grounds. The court found the reason to be both raceneutral and genuine.
The state's third peremptory challenge was exercised to remove juror Ausby. The defense again objected to the removal of another African-American. When *502 asked to offer a race-neutral reason for the strike, the prosecutor indicated that the juror's nephew had been prosecuted and was convicted of a crime. The court allowed the strike.
The state next challenged juror Barraza. Defendant did not object.
The state exercised its fifth peremptory challenge against juror White. Again, defendant objected to the striking of another African-American from the jury. In explaining its strike, the state observed that this juror had pled guilty to the commission of a crime (some kind of assault or battery). The prosecutor also noted that the juror said he had been wrongfully accused. The court found this to be both race-neutral and genuine.
The state's final peremptory challenge was exercised against juror Hampton. In response to defendant's Melbourne objection, the state explained that Mr. Hampton had been previously arrested and personally knew one of the state's witnesses, Officer Francis. The prosecutor further stated, without objection, that Officer Francis had previously arrested Mr. Hampton.
Defendant objected to this strike and observed that this was the fifth African-American stricken from the jury by the state. The trial judge allowed the strike.
Defendant recorded Melbourne objections to every state peremptory exercised against African-Americans. On appeal, however, he challenges only the strike against juror Blount. He argues that although the state's reason for striking juror Blount was race-neutral, it was pretextual. In Davis v. State, 691 So.2d 1180 (Fla. 3d DCA 1997), this Court stated that in order to preserve the issue of pretext for appellate review, the argument must be made to the trial judge during the Melbourne inquiry or at some time before the jury is sworn. Although defendant did not make that argument at the time Mr. Blount was excused, he thereafter repeatedly argued that the state was systematically excusing African-American jurors. By the time he renewed his objection prior to the swearing of the jury, as required by Joiner v. State, 618 So.2d 174 (Fla.1993), it was clear that the allegation of pretext was based on this alleged "pattern" of challenges. Accordingly, we conclude that the issue was preserved.[2]
Defendant correctly acknowledges that the state's reasons for striking Mr. Blount were race-neutral. The fact that a juror has been the victim of crime has been held to be a valid race-neutral reason for the exercise of a peremptory challenge. See Anderson v. State, 750 So.2d 741 (Fla. 3d DCA 2000); Porter v. State, 708 So.2d 338 (Fla. 3d DCA 1998); Dean v. State, 703 So.2d 1180 (Fla. 3d DCA 1997). We recognize that most of the cases that have found such a reason to be genuine involve the exercise of a defense challenge. We further acknowledge that generally, such a juror would not appear to be one that would prejudice the state. Accordingly, when considering an allegation of pretext, such a strike should properly be viewed with some measure of skepticism by the trial judge in determining the genuineness of the proffered reason. Nevertheless, defendant did not make this argument to the lower court and it was therefore waived. See Morrison v. State, 731 So.2d 864 (Fla. 3d DCA 1999); Fotopoulos v. State, 608 So.2d 784, 788 *503 (Fla.1992); Davis v. State, 691 So.2d 1180 (Fla. 3d DCA 1997).
Even if the issue had been properly preserved, there are circumstances where a prior experience as the victim of a crime could inure to the detriment of the state. For example, the victim of a violent crime who was unable to identify his or her assailant could prove adverse to the state in a case where the defense is misidentification. The situation with Mr. Blount presents another such example. Mr. Blount's statement during voir dire examination is subject to two reasonable interpretations. First, that he does not consider the crime of burglary to be a particularly serious offense. Second, and the more likely interpretation, that the burglary and theft of his property was not particularly significant. Either one of these interpretations could prove troublesome for the state. The first needs little elaboration. The defendant here was charged with the crimes of burglary of a dwelling, grand theft, criminal mischief and resisting an officer without violence. A juror who feels that the primary offense charged is insignificant, or not particularly worth prosecuting, would certainly be of concern to the prosecution. The second interpretation is no less troublesome given the facts of this case. If Mr. Blount was trying to say that because he did not lose anything significant his case was not worth pursuing, the state would justifiably be concerned in a case such as this, where the items stolen were of relatively little value. If the juror were to reach the same conclusion about the present case as he did about his own, he could conclude during trial that the case should never have been prosecuted and that an acquittal was therefore appropriate.
We further believe that whenever a prospective juror admits that he or she was the victim of a crime but chose not to report the same to the police and/or to prosecute the case in court, it is not unreasonable to infer that the juror either lacks faith in the criminal justice system or is afraid to get involved with it. Either reason is sufficient to overcome a suggestion of pretext if the trial judge believes them to be genuine. See generally Isom v. State, 601 So.2d 299 (Fla. 3d DCA 1992).
As concerns the only preserved issue in this appeal, defendant argues that the prosecutor's reason for striking Mr. Blount was pretextual because his excusal of so many African-Americans during the jury selection process establishes a pattern that is indicative of a discriminatory intent. We disagree. Every juror challenged by the state had either a personal history of arrest or a close relative with a previous arrest record.[3] The fact that a prospective juror has been previously arrested or has had a relative arrested has been repeatedly held to be a valid race-neutral reason for the exercise of a peremptory challenge. See Fotopoulos v. State, 608 So.2d 784 (Fla.1992); Allen v. State, 643 So.2d 87 (Fla. 3d DCA 1994); Aikens v. State, 609 So.2d 764 (Fla. 3d DCA 1992); Miller v. State, 605 So.2d 492 (Fla. 3d DCA 1992); Knight v. State, 559 So.2d 327 (Fla. 1st DCA 1990). The fact that such a juror asserts that he or she can, nevertheless, be fair and impartial, does not mean that the state must be satisfied with the response. The fact that the jurors who had this particular characteristic happened to be African-Americans does not alter the fact that such jurors may well have lingering ill feelings towards those who arrested and prosecuted them and their relatives.[4] The *504 state excused all jurors who had this characteristic. No similarly situated juror of another race was accepted by the state to serve on the jury. Based on this record the trial judge determined that the reasons given by the state were genuine. We cannot conclude that his decision was clearly erroneous. See Melbourne, 679 So.2d at 764-65 ("[T]he trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous").
The only other reason raised by defendant in this appeal to support the pretext argument is that the prosecutor did not ask Mr. Blount any questions concerning the burglary of his property. Defendant relies on that part of State v. Slappy, 522 So.2d 18, 22 (Fla.1988), which states that one of the factors that tends to demonstrate pretext is the "failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror." For two reasons this argument also fails. First, this argument was not made to the trial judge and was consequently waived. Second, even if the issue had been preserved, Mr. Blount's attitude toward the crime committed against him arose during defense counsel's voir dire examination. The prosecutor had already questioned the jury and was not entitled to re-examine the panel. Accordingly, the state never had a chance to question Mr. Blount on this very important issue.
We agree with Chief Judge Schwartz's observation that the role of appellate courts in the area of racial, ethnic and gender discrimination in jury selection has been redefined. In Melbourne, the Florida Supreme Court clarified the principles first articulated in Neil[5] and Slappy and determined that the primary responsibility for deterring discrimination in the jury selection process would rest with Florida's trial judges. The Court did so in three ways. First, it reiterated that all peremptory challenges are presumed to be exercised in a nondiscriminatory manner. Melbourne, 679 So.2d at 764. Second, it stressed that the burden of demonstrating discrimination in the exercise of a peremptory challenge rests with the objecting party. Id. Finally, the Court held that the ultimate issue of discrimination is primarily a credibility assessment best made by the trial judge, and that this determination will be affirmed on appeal unless clearly erroneous. Id. at 764-65.
Melbourne's holding clearly evinces the Court's intent to preserve the vitality of the peremptory challenge. Moreover, its directive to appellate courts that this issue is to be reviewed under the most rigorous standard of appellate review provided by Florida law, further speaks to the Court's intent that these trial court decisions must be given the greatest deference.[6]
Affirmed.
RAMIREZ, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
Judge Sorondo's characteristically comprehensive and incisive opinion proves more than I think the majority intends. It demonstrates, contrary to Slappy v. State, 503 So.2d 350 (Fla. 3d DCA 1987), approved, 522 So.2d 18 (Fla.1988), that, *505 through the creation of a series of procedural obstacles and an excessive indulgence in the discretion of the trial judge, the role of the District Courts in enforcing Neil principles when they are disregarded below has been effectively reduced to nil. I believe, however, that when the objection to the prosecution's strike of Mr. Blount was renewed before the jury was sworn, as required by Joiner v. State, 618 So.2d 174 (Fla.1993), it had become perfectly obvious that the challenge was based only on Mr. Blount's race, and should therefore have been disallowed. Because I cannot accept that any court, particularly an appellate one, is powerless to correct any error below, particularly a constitutional one, I would reverse on the authority of Slappy.
NOTES
[1] Melbourne v. State, 679 So.2d 759 (Fla. 1996).
[2] Although irrelevant to our analysis, we are compelled to observe that for all the righteous indignation expressed by defendant concerning the state's exercise of peremptory challenges to excuse African-Americans, of the six peremptory challenges exercised by defendant, five were used to excuse Hispanics. Defendant tried to use his sixth peremptory to excuse yet another Hispanic but the peremptory was disallowed by the trial judge. He does not appeal the propriety of that ruling.

Throughout jury selection, the state vigorously objected to this "pattern" of discrimination. As with the state's challenges, the trial judge correctly allowed the defendant's strikes.
[3] Indeed, although not argued to the judge below, during the state's voir dire examination of Mr. Blount, the juror admitted that his brother had been arrested for a narcotics violation.
[4] We note that the case for excusing prospective jurors White and Hampton was even more compelling than the rest. In addition to having been arrested, Mr. White specifically said that he had been wrongfully accused. Mr. Hampton had not only been arrested, he had been arrested by one of the state's witnesses in the present case. Additionally, during the prosecutor's voir dire examination, Mr. Hampton stated: "I have a problem with police officers." He then went on to relate how he had been arrested for no reason and subsequently acquitted.
[5] State v. Neil, 457 So.2d 481 (Fla.1984).
[6] We note that the standards set forth in Melbourne are completely different from those initially set forth in Neil and Slappy. Indeed, the stated purpose for the clarification of this area of the law was to more closely align the same with federal law and to eliminate the confusion brought about by Neil, Slappy and their progeny. Melbourne, 679 So.2d at 764 ("In light of Purkett [v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)], and due to the difficulty some Florida courts have had in applying our state law, we set forth the following guidelines to assist courts in conforming with article I, section 16, Florida Constitution, and the equal protection provisions of our state and federal constitutions.").