799 So.2d 421 (2001)
Isaac Lee SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-3277.
District Court of Appeal of Florida, Fifth District.
November 16, 2001.
*422 James B. Gibson, Public Defender, and Linda L. Gaustad, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Isaac Smith appeals his conviction and sentence imposed after a jury found him guilty of the offense of felony battery in violation of section 784.041, Florida Statutes (1997). Smith argues reversal is warranted because the State improperly struck a black prospective juror on criteria that were equally applicable to a white juror. We affirm.

Factual Background
During the voir dire examination of the venire selected for Smith's trial, the questions asked to prospective jurors Linthout, a white female, Blanton, a black male, and Lang, a white female, elicited answers that revealed each had relatives who had been prosecuted by the state for various criminal offenses. After examining each potential juror, the State accepted Linthout and used a peremptory challenge to strike Lang. The State then struck Blanton. Subsequent to the State striking Blanton, Smith objected and the following colloquy transpired:
[SMITH]: Your honor, for the record Mr. Blanton is an African-American mail [sic] and so is [Smith]. The State would be required to give a race neutral basis for the strike.
[STATE]: The race neutral reason for striking Mr. Blanton is that he, like Ms. Lang, has had a relative prosecuted by the [state], specifically a cousin was prosecuted for attempted murder. He *423 has another cousin who['s][ ] in prison now in Federal prison.
[COURT]: Defense.
[SMITH]: I would point out, your honor, that [the State] is correct about Ms. Lang, both Ms. Lang and Mr. Blanton pointed out that they would in no way, shape, or form hold it against the State... that their relative had been prosecuted by that office and also point out that Ms. Linthout who happens to be a Caucasian female who has had a son prosecuted by the State [] and, like Ms. [L]ang and Mr. Blanton, expressed she in no way holds it against the State.... The State has not chosen to strike Ms. Linthout, but it's seeking to strike Mr. Blanton who happens to be an African-American male.
[COURT]: I'll find that the proffered reason for race neutral reason is set forth by the State's answer provided on voir dire are on the record. They support the reasons given and the reasons given were not pretext to excuse the juror for a racial reasons.
After the jury was impaneled, it heard the evidence against Smith and returned a verdict of guilty.
Smith argues on appeal that although the State offered a facially-neutral reason for striking Blanton, the exercise of the peremptory challenge was pretextual when viewed in light of the surrounding circumstances. The State argues that because Smith had the burden of proof and failed to demonstrate that the trial court erred in concluding that its challenge was racially neutral, the verdict and sentence should be affirmed. We agree.
A trial court is vested with broad discretion in determining whether peremptory challenges are racially motivated. Reed v. State, 560 So.2d 203 (Fla.), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). In Melbourne v. State, 679 So.2d 759 (Fla.1996), the court adopted a three-step process that must be utilized to make this determination. The court explained:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
679 So.2d at 764 (footnotes omitted). When reviewing a trial court's application of this process, appellate courts must keep in mind that "[o]n appeal, peremptory challenges are presumed to be exercised in a nondiscriminatory manner, but the trial court's decision, which turns primarily on an assessment of credibility, will be affirmed on appeal unless clearly erroneous." Rodriguez v. State, 753 So.2d 29, 40 (Fla.2000) (emphasis omitted) (citing Melbourne, 679 So.2d at 764), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000).

*424 Application of the Three-Step Melbourne Process.

Step One
This step requires the party objecting to the peremptory challenge on racial grounds to timely object on that basis; show that the prospective juror is a member of a distinct racial group; and request that the court inquire of the person exercising the challenge his or her reason for doing so. Id. Smith successfully took this step so we proceed to step two.

Step Two
This step requires the trial court to ask the proponent of the strike to explain the reason for the strike. This query essentially shifts the burden of production to the party exercising the strike to come forward with a race-neutral explanation. The explanation need only be facially neutral: it does not have to be persuasive or plausible. Jones v. State, 787 So.2d 154, 156 (Fla. 4th DCA 2001) (citing James v. State, 768 So.2d 1221, 1222 (Fla. 3d DCA 2000) (quoting Melbourne, 679 So.2d at 763)).
The reasons offered by the State to strike Blanton consisted of the fact that he had a cousin who was prosecuted by the state and another cousin in federal prison. The fact that a prospective juror has been previously arrested or has a relative who has been is generally considered to be a valid race-neutral reason for the exercise of a peremptory challenge. See Fotopoulos v. State, 608 So.2d 784 (Fla.1992); Allen v. State, 643 So.2d 87 (Fla. 3d DCA 1994); Aikens v. State, 609 So.2d 764 (Fla. 3d DCA 1992); Miller v. State, 605 So.2d 492 (Fla. 3d DCA 1992); Knight v. State, 559 So.2d 327 (Fla. 1st DCA 1990). "The fact that such a potential juror asserts that he or she can, nevertheless, be fair and impartial, does not mean that the state must be satisfied with the response." Symonette v. State, 778 So.2d 500, 503 (Fla. 3d DCA 2001) (citations omitted). Accordingly, we conclude that the State successfully completed step two by coming forward with a race-neutral reason for the strike of Blanton, which now leads us to step three.

Step Three
This step essentially requires a credibility analysis by the trial court. If the court believes, given all the circumstances, that the facially race-neutral explanation is not a pretext, the strike will be sustained. The court's focus of this inquiry "is not on the reasonableness of the explanation but rather its genuineness." Melbourne, 679 So.2d at 764 (footnote omitted). "[T]he relevant circumstances that the court is to consider in determining whether the explanation is pretextual include such factors as the racial makeup of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged venireperson; or singling out the venireperson for special treatment." Rodriguez, 753 So.2d at 40 (citing Melbourne, 679 So.2d at 764 n. 8).
Having explained the legal requirements of step three, we turn to the record in the instant case to determine whether the facially race-neutral reason given by the State is pretextual. However, we first note that Florida courts have repeatedly held that it is racially discriminatory to exercise a peremptory challenge against a prospective juror in the minority where the proffered reason applies equally to a prospective juror in the majority. See Daniel v. State, 697 So.2d 959, 960-61 (Fla. 2d DCA 1997) (holding that the state's reason for exercising a peremptory challenge on a Hispanic juror was a discriminatory pretext where the proffered reason for the challenge applied equally to an *425 unchallenged, non-Hispanic prospective juror); see also Brown v. State, 733 So.2d 1128 (Fla. 4th DCA 1999); Foster v. State, 732 So.2d 22 (Fla. 4th DCA 1999); Randall v. State, 718 So.2d 230 (Fla. 3d DCA 1998); Overstreet v. State, 712 So.2d 1174 (Fla. 3d DCA 1998); Stroud v. State, 656 So.2d 195 (Fla. 2d DCA 1995); Richardson v. State, 575 So.2d 294, 295 (Fla. 4th DCA 1991). Nonetheless, after carefully reviewing the entire record of the voir dire examination, we find that the State's execution of its peremptory challenge in the instant case was not equally applicable to Lang, Blanton and Linthout.
During voir dire, the State informed the trial court that Blanton, unlike Linthout, had one cousin who had recently been prosecuted by it and another cousin who was serving time in federal prison. In Linthout's case, however, the juvenile charge against her son, which arose in 1987, was dropped prior to prosecution thereof. Such differences are significant because in the State's mind, Blanton could conceivably have more bias toward it because his cousins' prosecutions were advanced to trial and each cousin was, subsequent to a finding of guilt, incarcerated. Linthout's son was not incarcerated; rather, he was only required to seek drug treatment. We find, therefore, that such differences support the State's decision to strike Blanton.
Moreover, the record clearly shows that Blanton was not singled out for special treatment. We note that the State struck Lang based upon the fact that she had a relative who had been prosecuted by the state. Thus, both a white and a black prospective juror were stricken for similar reasons. We conclude that the trial court's assessment of the credibility of the State's reason for the strike of Blanton based on the factors we have discussed is not clearly erroneous and, therefore, should be affirmed.

Conclusion
Application of the Melbourne three-step process to the facts of the instant case lead us to conclude that the State gave a raceneutral reason for striking Blanton and that the trial court's assessment of the credibility of that reason, based on the facts and circumstances of the instant case, was not clearly erroneous. We, therefore, affirm Smith's conviction and sentence.
AFFIRMED.
THOMPSON, C.J. and ORFINGER, R. B., J., concur.