838 So.2d 627 (2003)
Edward Lee CUNNINGHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-3639.
District Court of Appeal of Florida, Fifth District.
February 28, 2003.
*628 James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Belle B. Schumann, Assistant *629 Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The defendant takes this appeal from his convictions and sentences, asserting that reversible error was committed during jury selection and in the imposition of consecutive minimum mandatory sentences. We affirm the judgment rendered by the trial court, but reverse and remand with respect to the imposition of consecutive minimum mandatory sentences.
The defendant was charged by Information with attempted robbery with a firearm, two counts of robbery with a firearm, aggravated battery with a firearm, aggravated battery with a deadly weapon, aggravated assault with a firearm, and resisting an officer without violence.
During voir dire, the prosecutor peremptorily struck a prospective juror who was an African-American woman. Defense counsel objected and demanded the prosecution provide a race-neutral reason for the strike. Although the trial court found that the basis of the challenge was race-neutral, defendant asserts that the reason was pretextual and seeks reversal on this ground.
When the prosecutor was asked by the trial court pursuant to State v. Neil, 457 So.2d 481 (Fla.1984), and State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), to provide a race-neutral reason for peremptorily striking this juror, the prosecutor responded that the juror had "testified that her sister is locked up in prison for theft, and she says she's close to her sister. So for that reason, she probably blamed the State." The juror related during voir dire that five years earlier her sister had been sent to prison for theft, but had since been released.
Defense counsel objected to the exercise of the challenge, saying, "That's just an excuse. She didn't say anything about having any ill feelings about her sister, about her treatment, about the justification of her imprisonment, nothing at all to indicate that that would affect her ability to be fair." The trial court found, however, that the reason given was not pretextual, and that the State had offered a race-neutral reason for the strike.
In Melbourne v. State, 679 So.2d 759 (Fla.1996), the supreme court articulated the three-step procedure for challenging peremptory strikes of jurors on the ground of racial bias:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (footnotes omitted).
The defendant asserts that the ruling of the trial judge was erroneous for two reasons. The defendant argues, first, that the challenged juror never indicated *630 that she could not render a fair and impartial verdict and that the prosecutor never asked her about her feelings toward the State growing out of the imprisonment of her sister. This argument, however, confuses a peremptory challenge with a challenge for cause. The reasons given for exercising a peremptory challenge need not be equivalent to a challenge for cause. Rodriguez v. State, 826 So.2d 494 (Fla. 4th DCA 2002). Indeed, where a prospective juror is challenged for a race-neutral reason, the fact that the juror asserts that he or she can nevertheless be fair and impartial does not mean that the challenging party must be satisfied with the response. See Symonette v. State, 778 So.2d 500, 503 (Fla. 3d DCA), rev. denied, 794 So.2d 606 (Fla.2001); see also Rodriguez.
Moreover, we have previously held that the fact that a prospective juror has a relative who had previously been criminally prosecuted is in itself a valid race-neutral reason for the exercise of a peremptory challenge. Smith v. State, 799 So.2d 421 (Fla. 5th DCA 2001). The facial reason then for the State's peremptory challenge of this juror was race-neutral, and the prosecutor's failure to inquire further of the prospective juror to determine whether she could render a fair and impartial verdict does not alter this conclusion.
The defendant's second contention is that the explanation for excluding the juror was pretextual because it applied equally to two unchallenged non-African-American venirepersons who ultimately served on the jury. As this court stated in Smith, such a contention essentially requires a credibility analysis by the trial court. Smith, 799 So.2d at 424. It goes without saying that the trial court is in a particularly good position to judge credibility and has broad discretion in this regard. Thus, the focus of the trial court's inquiry "is not on the reasonableness of the explanation but rather its genuineness." Melbourne, 679 So.2d at 764. Given the advantage of the trial court's position to judge credibility, its ruling on the genuineness of a peremptory challenge will be sustained on appeal unless demonstrated to be clearly erroneous. We should not "on a cold record, second guess" the trial judge. See Rodriguez v. State, 753 So.2d 29, 41 (Fla.), cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000).
In considering whether the State's explanation is pretextual, courts should consider, among others, the following factors: the racial makeup of the venire; whether prior strikes have been exercised against the same racial group; whether the reason for the challenge is equally applicable to unchallenged jurors; and whether a venireperson is singled out for special treatment. Rodriguez, 753 So.2d at 40. Accordingly, a challenge may be determined to be pretextual where a prospective juror is struck for a reason equally applicable to an unchallenged juror. See, e.g., Fleming v. State, 825 So.2d 1027 (Fla. 1st DCA 2002); Daniel v. State, 697 So.2d 959 (Fla. 2d DCA 1997). Conversely, where genuine differences exist in the responses of prospective jurors, a discriminatory pretext may well not be found. In Smith for example, we upheld the state's exercise of a peremptory challenge of an African-American venireperson who had one cousin who had recently been prosecuted and another serving time in a federal prison. The defense contested the challenge because the state did not seek to excuse a white venireperson who had a son charged with a juvenile offense that had been dropped before prosecution. This court reasoned that the state could conclude that the African-American juror bore more bias because the prosecutions of his cousins resulted in their imprisonment. Smith, 799 So.2d at 425. Additionally, we observed that the state had likewise peremptorily challenged a white venireperson whose relative had been prosecuted by the *631 state, so that both an African-American and white prospective juror were struck for similar reasons. Id.
The record here reflects that although both of the unchallenged white jurors stated during voir dire that they had unpleasant experiences with the police, the bases for these experiences were starkly different from that of the struck venireperson. The unpleasant experience of one of the unchallenged jurors involved being stopped by two undercover police officers at an intersection and being told that two pedestrians had the right of way. She had been upset because she did not initially realize the two men were police officers. The other unchallenged juror, who was hearing impaired, explained he and his wife had difficulty communicating with the police after their home was vandalized. There is a palpable difference between having close relatives prosecuted and imprisoned and merely having a negative police experience. Thus, we cannot say that the trial judge was clearly erroneous in its determination that the State had a race-neutral reason for striking the African-American juror.
The defendant also appeals his sentence. At sentencing, defense counsel objected to the imposition of consecutive minimum mandatory terms of imprisonment because the offenses arose from a single criminal episode. The trial court nevertheless imposed four consecutive 10-year minimum mandatory prison terms under section 775.087(2)(d), Florida Statutes (2001)[1], for each of four offenses committed by the defendant while possessing a firearm.
The State conceded error in connection with the defendant's motion to correct sentence and agreed that the trial court improperly imposed the consecutive minimum mandatory terms. The State further agreed that the sentences should be corrected so that the four minimum mandatory terms run concurrently rather than consecutively. The trial court agreed, but concluded that because of the expiration of the 60-day period for correction of a sentencing error provided by Florida Rule of Criminal Procedure 3.800(b), it could not grant relief.
In Stafford v. State, 818 So.2d 693 (Fla. 5th DCA 2002), this court held that section 775.087(2)(d), Florida Statutes, which states that consecutive minimum mandatory sentences shall be imposed for "any other felony offense," contemplates different criminal episodes before minimum mandatory sentences must be stacked. In view of Stafford, as well as the State's concession and the trial court's inclination to grant relief but for the expiration of the 60-day correction period, this cause is remanded for correction of the defendant's sentences to reflect concurrent, as opposed to consecutive, minimum mandatory sentences.
AFFIRMED in part, REVERSED in part, and REMANDED for correction of sentences.
SAWAYA and PLEUS, JJ., concur.
NOTES
[1] This section provides:

(d) It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted. The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.