# Third District Court of Appeal

## State of Florida

Opinion filed May 27, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1485
Lower Tribunal No. F24-3402
_____

**Marvin Mesamours,**
Appellant,

vs.

**State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Ariel Rodriguez, Judge.

Carlos J. Martinez, Public Defender, and Maria E. Lauredo, Chief Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Camilo Montoya, Assistant Attorney General, for appellee.

Before SCALES, C.J., and MILLER, J., and KOENIG, Associate Judge.

KOENIG, Associate Judge.

## INTRODUCTION

Marvin Mesamours appeals his conviction and sentence for resisting a police officer without violence under section 843.02, Florida Statutes (2024). He raises three issues on appeal: (1) the trial court erred in permitting the State to exercise a peremptory strike on an African American juror; (2) the State failed to prove Mesamours resisted the specific police officers alleged in the information; and (3) the court erred in denying Mesamours' motion to be tried before a jury of twelve peers. Finding no error by the trial court, we affirm.

## The Peremptory Strike

Mesamours contends on appeal that the trial court reversibly erred when it allowed the State to strike Juror Jones, an African American female. We review this issue for abuse of discretion. Poole v. State, 151 So. 3d 402, 409 (Fla. 2014) ("This court has consistently held that trial courts have broad discretion in determining the propriety of the exercise of a peremptory challenge.")

During voir dire, when asked by defense counsel whether police officers are more or less likely to lie or tell the truth than the average person, another juror said that police would lie "like everybody else." Juror Jones

agreed with that statement: "I feel the same as he just stated. Police officers, they can lie just the same. Their profession doesn't make a difference."

During jury selection, the State attempted to exercise its first peremptory strike on Juror Jones. Defense counsel asked for a race neutral reason for the strike, based on Juror Jones' status as a member of a protected class. The State responded that when counsel was questioning the panel, Juror Jones stated that the officer's credibility would be in question. Neither defense counsel nor the court had notes to support this contention. In the interest of time, the State gave the court a second race neutral reason for the strike: Juror Jones served on a criminal jury in the past that reached a decision.[1] Defense counsel objected again, pointing out that another juror, Juror Montes, a white male, was similarly situated in that he also sat on a criminal jury.

The court ruled: "the State has given a race-neutral reason on the second one that I find to be genuine and . . . I'm going to allow it." The court went on to say: "As for the other point, I just don't know. I don't have a note.

---

[1] See, e.g., Garcia v. State, 75 So. 3d 871, 874 (Fla. 3d DCA 2011) (acknowledging that a potential juror's history of previously sitting on a jury trial is a race and gender neutral reason for exercising a peremptory strike).

The only way I could really verify is going back on the record, but based on the second one, I think I meet Melbourne.[2] So, I'm going to allow the strike."

In Melbourne v. State, 679 So. 2d 759 (Fla. 1996), the Florida Supreme Court set forth guidelines for trial courts in ruling upon a race-based objection to a peremptory challenge.[3] First, a party objecting to the use of a peremptory challenge must demonstrate the venireperson is a member of a distinct racial group and request a reason for the strike. Id. at 764. Next, the proponent of the strike must give a race-neutral explanation for the strike. Id. Finally, if the reason given is facially race-neutral, "and the court believes that, given **all the circumstances surrounding the strike**, the explanation is not a pretext, the strike will be sustained." Id. (emphasis added). The court should focus on the genuineness of the strike proponent's explanation and "**the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination**." Id. (emphasis added).

Following Melbourne, the law in Florida is clear. "A trial court's decision to allow a peremptory strike of a juror is based primarily on an assessment

---

[2] Melbourne v. State, 679 So. 2d 759 (Fla. 1996). It is important to note that the trial court did not find the State's first race-neutral reason for striking Juror Jones was not genuine.

[3] "It is well settled in Florida that peremptory challenges may not be used to exclude prospective jurors solely because of their race or ethnicity." Nowell v. State, 998 So. 2d 597, 601 (Fla. 2008).

of credibility." <u>Poole</u>, 151 So. 3d at 409 (citing <u>King v. State</u>, 89 So. 3d 209, 229 (Fla. 2012)). On review, we "must 'acknowledge that **peremptory challenges are presumed to be exercised in a nondiscriminatory manner**,'" <u>id.</u> (emphasis added) (quoting <u>Nowell v. State</u>, 998 So. 2d 597, 602 (Fla. 2008)). Of significance, "[a]s the trial court is generally in the best position to assess the genuineness of the reason advanced, **the decision will be affirmed unless clearly erroneous**." <u>Id.</u> (emphasis added).

In this case, the reason articulated by the State for striking Juror Jones was initially that the prosecutor believed Juror Jones had demonstrated a bias against police officers under investigation. Rather than waste more time waiting for a check of the record to verify this explanation, the State presented the court with an additional race neutral reason for the strike of Juror Jones – that she had previously sat on a criminal jury that reached a verdict. The court found this reason to be genuine and allowed the strike.

On appeal, Mesamours urges this court to reverse the trial court's decision to allow the strike, asserting that another juror (a white male) was accepted despite the fact that he also previously sat on a criminal jury. According to Mesamours, this establishes that the reason given by the State for striking Juror Jones was a pretext for racial discrimination and thus, that it was clear error for the trial court to allow the strike. We disagree.

Although a strike based on a reason equally applicable to an unchallenged juror is one factor which courts have found relevant to the genuineness inquiry,[4] we cannot say that this detail alone establishes clear error in this case. Instead, "[i]n making a genuineness determination, the Court should consider **all relevant circumstances surrounding the strike**," presuming that the strike is not discriminatory. Poole, 151 So. 3d at 409-10. This important precept distinguishes this case from our prior precedent in Overstreet v. State, 712 So. 2d 1174 (Fla. 3d DCA 1998) and Randall v. State, 718 So. 2d 230 (Fla. 3d DCA 1998).

In Overstreet, 712 So. 2d at 1175, the State attempted to use a peremptory strike on Juror Thomas, an African American female. When asked for a race-neutral reason for the strike, the prosecutor indicated that Juror Thomas "had indicated a problem with accepting testimonial evidence." However, as defense counsel pointed out, another juror, Juror Barrera, a white female, "had also provided essentially the same responses as [Juror] Thomas regarding testimonial evidence." Id. The trial court allowed the

---

[4] See, e.g., Johnson v. State, 238 So. 3d 726, 741 (Fla. 2018). Other factors include the racial makeup of the venire, prior strikes exercised against the same racial group and singling out a juror for special treatment. None of these factors are present in this case. See also Melbourne v. State, 679 So. 2d 759 (Fla. 1996).

6

strike, and on appeal, this court found that the trial court's finding of genuineness was belied by the record and that the court was mistaken in its assessment of the stricken jurors' voir dire responses. Id. Of significance, the court's review of the record revealed that Juror Barrera (the juror who was not challenged) "ultimately expressed thoughts about eyewitness testimony [that] was not appreciably different from those given by [Juror] Thomas." Id.

By contrast, in the instant case, our review of the record reveals that the prosecutor's initial reason for striking Juror Jones (that she demonstrated a bias against police officers) was accurate: she agreed that police officers "lie like everybody else." In addition, no other juror kept by the State was similarly situated to Juror Jones in her feelings about a police officer's ability to lie. Accordingly, in our assessment, this explanation for the strike does not appear to be pretextual.

More to the point, Overstreet faithfully applied a critical tenet in our jurisprudence related to the court's genuineness inquiry in the use of a peremptory strike for jurors from a protected race: the genuineness inquiry is **case specific**, and "based primarily on an assessment of credibility." King, 89 So. 3d at 229. In evaluating this case, we find another case from our sister court more instructive.

7

In Smith v. State, 799 So. 2d 421 (Fla. 5th DCA 2001), the race neutral explanation given by the State in exercising a peremptory strike against an African American male was that he had a relative who had been prosecuted by the State and another in prison. Id. at 422-23. However, as the defense pointed out, the State kept another juror (not a member of a protected class) who also had a relative prosecuted by the State. Id. at 423. On appellate review, the Fifth DCA held that "after carefully reviewing the entire record of the voir dire examination, we find that the State's execution of its peremptory challenges in the instant case was not equally applicable to" both jurors. Id. at 425. Specifically, the Smith court noted that the stricken juror's family member had recently been prosecuted and another family member was still serving time. By contrast, the family member of the juror not stricken had his juvenile charges dropped prior to prosecution more than ten years earlier. Id. Thus, the appellate court pointed out, "[s]uch differences are significant because in the State's mind, [the stricken juror] could conceivably have more bias toward it because his cousins' prosecutions were advanced to trial and each cousin was, subsequent to a finding of guilt, incarcerated. [The other juror]'s son was not incarcerated; rather, he was only required to seek drug treatment." Id. at 425. Accordingly, the court found "that such differences support the State's decision to strike [the stricken juror]." Id.

8

Similar to <u>Smith</u>, <u>id.</u>, and unlike <u>Overstreet</u>, in this case, after a review of "all relevant circumstances," we find that the trial court's determination that the strike of Juror Jones was genuine is not clearly erroneous. Although both Jurors Jones and Montes previously served on juries, the State's initial explanation that it was striking Jones because she indicated a bias against police officers is supported by the record, and compels affirmance. <u>See also</u> <u>Poole</u>, 151 So. 3d at 413; <u>Murray v. State</u>, 3 So. 3d 1108, 1119 (Fla. 2009) (noting "the most important consideration is that the trial judge actually 'believes that given all the circumstances surrounding the strike, the explanation is not a pretext.'"); <u>Reed v. State</u>, 560 So. 2d 203, 206 (Fla. 1990) (the "trial judge necessarily is vested with broad discretion in determining whether peremptory challenges are racially intended. Only one who is present at the trial can discern the nuances of the spoken word and the demeanor of those involved."); <u>Wimberly v. State</u>, 118 So. 3d 816 (Fla. 4th DCA 2012) (based on a review of the voir dire as a whole, and the trial court's discretion in assessing the credibility of the proffered reasons, court allowing strike not clearly erroneous); <u>King v. Byrd</u>, 716 So. 2d 831, 834 (Fla. 4th DCA 1998) (noting "appellate review [of a trial court's genuineness finding] is very narrow indeed" because "[a]s appellate judges, we were not at the trial. We did not see the expressions, hear the tones of voices, or

9

observe the general dynamics of the courtroom. That is why <u>Melbourne</u> left decisions with respect to peremptory challenges to the trial court.").

Presuming that the challenge to Juror Jones was exercised in a nondiscriminatory manner, as we must, see <u>Poole</u>, 151 So. 3d at 409, we find no error by the trial court in allowing the strike.

**<u>Failure of Proof</u>**

Mesamours argues that the State failed to prove at trial that he resisted Detectives Dordor and Russel, the officers named in the information charging him with resisting an officer, and thus, that his conviction and sentence must be reversed. Mesamours is correct that the State was required to prove he resisted the specific officers named in the information charging him with the crime. <u>See, e.g.</u>, <u>Carlson v. State</u>, 166 So. 3d 957 (Fla. 4th DCA 2015). However, our review of the record establishes that the State did prove Mesamours resisted Detectives Dordor and Russel because he accelerated in an attempt to avoid police after the officers activated their emergency lights. <u>See</u> <u>C.E.L. v. State</u>, 24 So. 3d 1181 (Fla. 2009) (flight in knowing defiance of an officer's lawful order to stop constitutes offense of resisting without violence).

**<u>Jury of 12</u>**

10

Finally, Mesamours contends that his conviction by a six-person jury violated his constitutional right to a twelve-person jury. However, as we have held before, we are bound by our prior precedent to affirm. See <u>Williams v. Florida</u>, 399 U.S. 78 (1970) (holding twelve-person jury not required under the Sixth and Fourteenth Amendments); <u>Ryan v. State</u> 390 So. 3d 86, 87 n.2 (Fla. 3d DCA 2023) (holding we are bound by prior precedent to affirm the denial of a motion to empanel a twelve-person jury) (citing <u>Jimenez v. State</u>, 167 So. 3d 497 (Fla. 3d DCA 2015)).

## **CONCLUSION**

In conclusion, we affirm the conviction and sentence in all respects.